CASE 44.—ACTION BY THOMPSON BELL AGAINST JACOB F. MERRIWETHER.—November 14, 1900.

# Merriwether v. Bell.

Appeal from Jefferson Circuit Court (Chancery Division.)

Judgment for defendant, and plaintiff appeals.— Reversed.

1. Judgment—Enforcement—Execution—Subjection of Unliquidated Demand—Assumpsit—Measure of Damages—Transfer of Action.—Under Civil Code Prac., section 439, providing that the plaintiff in an execution returned "No property found," may institute an equitable action "for the discovery of any money, chose in action, equitable or legal interest, and all other property to which the defendant is entitled, and for subjecting the same to the satisfaction of the judgment," plaintiff may subject any claim of the debtor against another on which an action of assumpsit would lie at common law.

Merriwether v. Bell.

2.  Where the purchaser of one of two adjoining lots went upon
    the other lot and took sand therefrom with the consent of
    the vendor, both supposing that it was on the lot purchased
    the vendor's remedy is an action of assumpsit, to recover
    the value of the sand taken, the mistake being mutual.
3.  The measure of damages in such an action is not the dam-
    age to the lot by the excavation, or what it would cost to
    fill it up, but the value of the sand converted.
4.  Under Civil Code Prac. section 12, a defendant in an equitable
    action may have the action transferred to the ordinary
    docket for the trial of any issue concerning which he is
    entitled to a jury trial.

ISAAC T. WOODSON for appellant.

H. M. LANE for appellee. .

OPINION OF THE COURT BY JUDGE HOBSON—
Reversing.

On December 19, 1894, appellant recovered judg-
ment against David Yancy individually and as sur-
viving partner of the firm of Stone & Yancy, for
$600.00 and costs, on which execution was issued,
and returned no property found. He then on Au-
gust 23, 1895, filed a petition in equity against the
judgment defendants and the appellee Thompson
Bell, on the return of no property found, in which
he sought to subject to his judgment a demand in
favor of Stone & Yancy against Bell, which, as he
alleged, arose in this way: Stone & Yancy owned a
tract of land fronting 420 feet on Ormsby Avenue,
Louisville, Ky., and running back 380 feet; off this
tract they sold and conveyed to the appellee Bell a
lot fronting 116 feet on Ormsby Avenue and running
back 380 feet, and undertook to put him in possession
of the property so conveyed; Bell entered and dug
a sand pit and hauled away a large quantity of sand.
After this it was discovered that the excavation was

not on the property conveyed to Bell, but on another lot. The lot conveyed to Bell is described as lying at the intersection of Seventeenth street and Ormsby Avenue; but when Bell entered, Seventeenth street had not been extended as far as Ormsby Avenue, and the parties in locating the point at which Bell was to dig his sand pit made a mutual mistake as to the point where Seventeenth street when extended would strike Ormsby Avenue. When the mistake was discovered several years afterwards, Bell insisted on holding the corner lot which had been conveyed to him, but did not pay Stone & Yancy for the sand taken from the other lot, or the excavation made in it. Appellant alleged that the sand so taken by Bell was appropriated by him by mutual mistake of the parties; that he took it by the consent of Stone & Yancy, but that their consent was given by mistake; that by reason of the mistake Bell had received the benefit of the sand pit and had used the sand, which was of value $800.00, and agreed to pay them therefor. A demurrer having been overruled to the petition, Bell answered, traversing its allegations, and proof having been taken which sustained substantially the allegations, except of the promise to pay for the sand, the court below dismissed the action on the ground that the demand against Bell was an unliquidated claim for damages and not subject to garnishment.

In Drake on Attachments, section 548, the rule is thus stated:

"In no case where the claim of the defendant against the garnishee rests in unliquidated damages, can the garnishee be made liable. B. & P., partners, were summoned as garnishees of T., and it appeared that they had signed and delivered to T. a paper in

the following words: 'This may certify that if Mr. S. T. should wish to purchase of us tinware at our wholesale prices within twelve months from date, and should have O. P.'s note in his possession, we will take the same in payment.' Within twelve months from the date of this instrument, T. presented to B. & P. four notes of O. P., and demanded their amount in tinware at wholesale prices, and B. & P. refused to comply with the demand. It was contended that on this state of facts B. & P. might be held as garnishees of T.; but the court decided that as T.'s claim was not a legal debt, but rested only in unliquidated damages, the garnishment could not be sustained. So, a mere liability of the garnishee to an action on the part of the defendant for negligence, fraud, slander, or assault and battery; or for the wrongful conversion of the defendant's property; or for the recovery from a creditor of usurious interest paid him by the defendant; or for damages caused by a wrongful attachment, cannot be the foundation of a judgment against the garnishee."

The same rule is stated in Shinn on Attachments, section 850, and in Freeman on Executions, section 167, and it is supported by many adjudications. But the rule as laid down by these authors is in reference to ordinary attachments in which the person against whom the unliquidated damages are claimed is only summoned as a garnishee and not made a defendant in the action. This is not that kind of case, but is an action under section 439 of the Code of Practice, and the rights of the parties must be determined under the statute, which is as follows:

"After an execution of fieri facias, directed to the county in which the judgment was rendered, or to the county of the defendant's residence, is returned

by the proper officer, either as to the whole or part thereof, in substance, no property found to satisfy the same, the plaintiff in the execution may institute an equitable action for the discovery of any money, chose in action, equitable or legal interest, and all other property to which the defendant is entitled, and for subjecting the same to the satisfaction of the judgment; and in such actions, persons indebted to the defendant, or holding money or property in which he has an interest, or holding evidences or securities for the same, may also be made defendants."

In Farmers' Bank of Ky. v. Morris, 79 Ky., 157, it was held that, although a growing crop was exempt from execution before the first day of October under the statute as it then stood, it might be subjected in a proceeding under this section. The court said:

"Section 439 of the Civil Code which authorizes a proceeding in equity on return of no property found, was intended to enable the creditor to subject to the payment of his claim 'any money, choses in action, equitable or legal interest, and all other property to which the debtor is entitled.' It affords a remedy that did not exist at law because of the inability of the law court to reach all the interests and property of the creditor by execution, which is the only means by which that court can enforce its judgments."

The words "chose in action" and "all other property to which the defendant is entitled," seem to us broad enough to cover the demand in contest. The statute is remedial, and should be liberally construed with a view to promote its object, which evidently was to enable the creditor after a return of

no property found to reach by this kind of proceeding all the property of the judgment defendant. The demand against Bell for the value of the sand which he had converted was a property right of Stone & Yancy which would have passed to their assignee for the benefit of creditors if they had made a voluntary assignment for the benefit of their creditors generally. Bell was not guilty of a trespass, because he entered and took the sand by the consent of Stone & Yancy. His liability to pay for the sand is precisely the same as his liability would have been for rents collected by a similar mistake, or personal property in like manner converted. Whenever there is a legal liability the law creates a promise upon which an action of assumpsit will lie. (Daniel v. Daniel, 9 B. Mon., 197.)

It is earnestly argued for appellee that when property is converted by mistake, the owner has the right to elect whether he will sue for the taking of the property in tort, or waive the tort and sue in assumpsit for the value, and that he only can make this election. In support of this contention, we are referred to some decisions in other states, which appear to so hold; but they cannot apply to this case, because both the taking and conversion of the sand was consented to by Stone & Yancy, and they could not sue in tort for that which was done by their consent. The mistake being mutual and Bell having converted and enjoyed by reason of it their property, their only remedy is an action in assumpsit to require him to pay for that which he has received and for which in justice and right he ought to pay. (Bishop, Non-contract Law, sections 49-51.)

What other claims for unliquidated damages may be reached and subjected under the statute above

quoted, we need not determine in this case; but we are satisfied it must at least include all claims on which an action of indebitatus assumpsit lay at common law, if the plain purpose of its enactment is not to be defeated.    The debtor is a defendant to the action, and may by section 12 of the Code have the action transferred to the ordinary docket for the trial of any issue concerning which he is entitled to a jury trial.

The proof is very conflicting as to the value of the sand taken and the amount.    The measure of damages is not the damage to the lot by the excavation, or what it would cost to fill it up, but the value of the sand converted.    There was some loam in the sand, and the quantity of it cannot be determined accurately from the size of the excavation.    It would seem also that the sand varied in quality, and was not sold at a uniform price.    On all the evidence we have concluded to fix the quantity of the sand at 2,000 loads, and the price at twenty cents a load, making in all $400.00, for which judgment will be entered, with interest from the filing of the petition, and cost.

Judgment reversed and cause remanded for a judgment and further proceedings not inconsistent with this opinion.