CASE 77.—ACTION BY JOHN BRACKETT'S ADMINISTRATOR
    AND OTHERS AGAINST VINCENT ·BOREING'S
    ADMINISTRATOR AND OTHERS.—May 6, 1908.

# · Brackett's Admr., &c., v. Boreing's Admr. &c.

Appeal from Bell Circuit Court.

From the judgment plaintiffs appeal.—Affirmed in
part and reversed in part.

1.  Judgment—Conformity to Pleadings—Prayer for Relief.—In
    an action on notes given for the purchase price of land to
    plaintiff's intestate, where one of the makers was merely
    made a party defendant, and no personal judgment was
    prayed against him, plaintiff was not .entitled to a personal
    judgment against such defendant.
2.  Assignments—Sufficiency—Parties—Purchase by Debtor of
    Claims Against Creditor—Amount Recoverable.—A debtor
    may purchase debts due from his creditor to others at less
    than their value, and demand a settlement for the full amount
    of the debts so purchased.
3.  Trusts—The Relation—Debtor and Creditor.—In the absence
    of a contract to that effect, a debtor is never a trustee for
    his creditor.
4.  Set-Off—Assigned Claims—Set-Off by Debtor of Claims
    Against Creditor—Amount.—Defendant's intestate was in-
    debted to plaintiff's intestate, and creditors of the latter
    attached the money in the hands of the former for debts
    due them, and pending the attachment defendant's intestate
    bought the judgments from the attaching creditors.   Held,
    that the attachment of the money in the hands of defendant's
    intestate which was due to plaintiff's intestate did not con-
    stitute the former a trustee for plaintiff's intestate as to the
    money attached, and hence he was entitled to set off against
    his debt to plaintiff's intestate the full amount of the judg-
    ments purchased, and not merely the amounts actually paid
    therefor; but certain attorney's fees paid in connection with

the purchase of the judgments, being in effect a part of the purchase price thereof, should not also have been set off in addition to the full amount of the judgments.

5. Appeal—Reservation of Grounds—Exceptions—Failure to Rule on Exception—Effect.—Even though the evidence of certain witnesses was inadmissible on the ground that some of the parties to the transaction were deceased at the time, the trial court not having ruled on the exceptions taken to the testimony, they will be deemed waived.

6. Set-Off and Counterclaim—Assigned Claims as Set-Off—Validity of Assignment.—In an action for the purchase price of land, where defendant attempted to set off the amount of certain judgments against plaintiff purchased by defendant from the judgment creditors, evidence examined, and held to sustain a finding by the chancellor that defendant purchased the judgments for himself, and not as agent for plaintiff.

7. Appeal—Review—Findings by Court—Equitable Actions—Uncertainty of Evidence.—Evidence as to whether there was a settlement between plaintiff's intestate and one of defendant's of debts due the former, or the exact date of such settlement being vague and uncertain, the judgment of the chancellor dismissing a claim for money due by reason of such settlement will not be disturbed.

8. Attachment—Lien and Disposition of Property—Priorities Between Attachment and Other Claims—"Interest in Money in Hands of Defendant."—Civil Code Practice, section 439, provides that after an execution and return of nulla bona plaintiff may institute an equitable action for the discovery of any money, etc., to which defendant is entitled, and persons indebted to defendant, or holding money in which he has an interest, may be made parties defendant in such action. H. attached money due from defendant to plaintiff, and the attachment had been sustained, when defendant bank, a creditor of H., attached the money in the hands of defendant which was due H., the former being served with notice of the attachment. Held, that after his attachment thereof H. had an interest in the money in the hands of defendant within the statute, service of the attachment upon defendant being sufficient notice of the attachment of the fund due H. under his attachment, and it was immaterial that plaintiff was not made a party, and hence the purchase thereafter by defendant of the judgment from H. was at his peril, and did not defeat the claim of the bank to the fund which it had attached in his hands.

Brackett's Admr., &c., v. Boreing's Admr., &c.

ON REHEARING FEBURARY 2, 1909—

9. Judgment—Assignment—Rights of Parties—Notice to Debtor.
  —A debtor may settle with his judgment creditor at any
  time, and such settlement will be valid and binding, unless,
  at the time made, the debtor has notice that the judgment
  so settled had been previously assigned to another.

10. Pleading—Pleading Subsequent to Answer—Necessity.—In a
  suit on a purchase-money note, a judgment creditor of plain-
  tiff intervened and sought to subject the liability of defend-
  ant to his judgment. Other suits by judgment creditors of
  plaintiff were consolidated with this suit. After intervener's
  death, his administratrix petitioned to revive the suit, alleging
  that by a settlement between her intestate and plaintiff a
  sum of money was due her intestate. Defendant in the suit
  answered that the judgment held by the intestate against
  plaintiff had been assigned to him, and the administratrix
  pleaded non est factum as to the assignment. The adminis-
  trator of plaintiff replied to the answer of the defendant to
  the administratrix's petition, denying the assignments and
  alleging the settlement. No response was filed by the de-
  fendant to this reply. Held that, in view of the unusual pro-
  cedure in pleading, the administrators of the defendants should
  not be precluded by the allegations of the reply, but that the
  issue should be framed as to whether a settlement had been
  made with notice of the assignments, and, by reason of the
  plea of non est factum, proof should be taken of the exist-
  ence of that assignment.

N. B. HAYS, J. SMITH HAYS and DISHMAN & DISHMAN for
appellants.

COOK & JONES for appellees.

(No briefs—Record out of office.)

OPINION OF THE COURT BY WM. ROGERS CLAY, COM-
MISSIONER.

This is the second appeal of this case. The opinion
on the former appeal will be found in 89 S. W. 496, 28
Ky. Law Rep. 386. In 1889 John Brackett sold to
Vincent Boreing and M. J. Moss his land. Boreing

and Moss, as part of the consideration therefor, exe-
cuted their note to Brackett for $1,612.79. Brackett,
who had purchased a tract of land from E. Carrico
and executed his note in part consideration therefor,
pledged the Boreing and Moss note as collateral se-
curity. In 1891 Brackett, for the benefit of Carrico,
brought suit against Boreing and Moss on the note
of $1,612.79, alleging that it was wholly unpaid, and
that it was part of the purchase price of the land sold
and conveyed by him to Boreing. He also alleged
that he was indebted to E. Carrico, and to secure the
latter in his debt had pledged the note to him, but
that Carrico, not wishing to incur the expense and
trouble of an action, had returned the note to him to
collect and refused to join in the action. On July 19,
1897, P. Hendrickson filed his petition to be made a
party to the action, and praying that it be taken as
an answer and cross-petition against Boreing and
Brackett. In this pleading he set up that he had ob-
tained judgments and return of "no property found"
in 1893, and that he had taken out an attachment in
the action instituted thereon and summoned Boreing
and Moss as garnishees, attaching any money in their
hands that they owed Brackett. At the same term
the three actions that were pending in the court—E.
Gregory v. Brackett, Hendrickson, and Boreing, P.
Hendrickson v. Brackett and Boreing, and Hogan
Miller and Dink Miller v. Brackett( Hendrickson, and
Boreing, all of which were actions by creditors upon
return of "no property found" against John Brackett,
in which Boreing was garnishee—were consolidated
with the suit of John Brackett v. Vincent Boreing,
etc., above referred to. On September 10, 1897, Will-
iam Lock, assignee of the Cumberland Valley Bank,
which had procured judgments against P. Hendrick-

son amounting to $781.24, and upon which execution had been returned "no property found," instituted an equitable action against P. Hendrickson and V. Boreing in which he alleged that he was "informed, believes, and charges it to be true that defendant V. Boreing had in his hands considerable money which is owing to one John Brackett, but had been attached by and will be and is due and owing to defendant P. Hendrickson." On October 30, 1899, Lock filed an amended petition in which he fully sets out the attachment lien of Hendrickson, and then says: "At said time the said Boreing was indebted to said Brackett by note for purchase money on land in the sum of $1,612.79, with interest from September 24, 1890, until paid, and also the sum of $3,178 for and on account of purchase money that was due and owing said Brackett." Boreing was summoned to answer and disclose any legal or equitable interest or other property in his hands belonging to said Hendrickson on September 10, 1897. On January 31, 1900, Hannah Hendrickson, administratrix of P. Hendrickson, filed a petition for revivor, and asked that she recover of John Brackett and V. Boreing the sum of $250 pursuant to a compromise agreement between John Brackett and Hendrickson, which she alleged was executed on August 17, 1898. On December 28, 1900, V. Boreing filed his answer to this petition, which in part is as follows: "He (Boreing) says that on the 8th day of August, 1898, by writing, the said P. Hendrickson then and there signed and delivered to this defendant and sold and assigned each of the judgments held by him against John Brackett and mentioned in the said petition of Hannah Hendrickson; and this defendant is and has been ever since the owner and holder of said judgment. * * *" On January 14, 1901, Hannah

Hendrickson, by a verified reply, pleaded non est factum as to the alleged writing of August 8, 1898. On October 21, 1901, Brackett's administrator filed a reply to said answer of Boreing in which it was denied (1) that Boreing purchased the three judgments of Hendrickson against Brackett, or that Hendrickson executed, signed, or delivered the alleged writing of August 8, 1898; (2) that John Brackett made a full and complete settlement with his creditor, P. Hendrickson, on August 17, 1898; that said settlement was made in good faith, without notice, actual or constructive, of any assignment of said judgments to said Boreing; (3) that if said writing of assignment was ever made it was procured for the further purpose of defrauding the said Brackett and his creditors, and was procured by fraud, covin, and deceit; (4) that if Boreing did pay said Hendrickson the alleged $100 for the alleged assignment of said judgments he did so as the agent of said Brackett, and the $100 so paid was the money of said Brackett, which the said Boreing held in trust for him. On the former appeal of this case the judgment was reversed and the trial court directed to enter a judgment in favor of Brackett's administrator for the sum of $3,178, with interest from July 5, 1899, in addition to the judgment on the note as given by the circuit court. Upon the return of this case it was submitted to the court for the determination of the following questions: (1) Whether personal judgment should go against M. J. Moss for the sum of $3,178 with interest; (2) to determine the conflicting claims between Brackett's administrator and Boreing as to the various judgments claimed to have been purchased by Boreing; (3) to determine the conflicting claims between Boreing and Hendrickson's administratrix with reference

to the Hendrickson judgments; (4) to determine the
conflicting claims between Boreing and the assignee
of the Cumberland Valley Bank.   Thereupon the trial
court held that Brackett's administrator was not en-
titled to a personal judgment against Moss for $3,178
with interest; that Boreing's administrators were en-
titled to credit for the amount of the judgment in
favor of Hogan and Dink Miller and for the amount
of the judgments in favor of P. Hendrickson, also for
certain other credits which are not disputed; that the
claim of Hannah Hendrickson, administratrix of P.
Hendrickson, against the administrator of John
Brackett, by reason of the alleged settlement made
between Brackett and Hendrickson, should be dis-
missed; also that the claim of the assignee of the Cum-
berland Valley Bank be dismissed.   Judgment was
then entered accordingly, and Brackett's administra-
tor and the assignee of the Cumberland Valley Bank
prosecute this appeal.

First.   It appears that Brackett's administrator
simply made Moss a party defendant to the action.
Nowhere in the record did Brackett or his adminis-
trator pray for a personal judgment against Moss for
the land sold by Brackett to Boreing.   Under these
circumstances Brackett's administrator was not en-
titled to a personal judgment against Moss, and the
lower court did not err in so holding.

Second.   Brackett's administrator contends that
Boreing's administrators are not entitled to credit for
the Hogan and Dink Miller and P. Hendrickson judg-
ments upon the following grounds: (a) Boreing was
indebted to Brackett, and after the service of the
attachment by the attaching creditors on Boreing the
money of Brackett was tied up in Boreing's hands,
and was then held by Boreing as trustee for Brackett,

and he could not therefore use the money of Brackett to purchase the judgments of the attaching creditors, as the relationship then existing between Brackett and Boreing was thereby made one of trust; (b) Boreing entered into a positive agreement with Brackett to purchase the judgments in question for the benefit of Brackett.

(a) In support of the first proposition counsel for Brackett's administrator cite several authorities; but an examination of these authorities shows that they do not go to the extent of holding that a debtor who is garnisheed thereby becomes a trustee for his creditor whose funds are attached. On the other hand, the authorities in certain jurisdictions hold that the garnishee, by virtue of the attachment, becomes the trustee merely of the attaching creditors. Perkins v. Guy, 2 Mont. 15; Royer et al. v. Fleming et al., 58 Mo. 438. Manifestly, unless there is a contract to that effect, a debtor is never a trustee for his creditor. Nor do we see how the fact that the funds in the debtor's hands are attached can at all change the relation which the debtor sustains to his creditor. The law is well settled that a debtor may purchase debts due from his creditor to others at less than their value, and demand a settlement for the full amount of the debts so purchased (Young v. Miller, 7 B. Mon. 540; Otwell v. Cook, 9 B. Mon. 357; McBrayer v. Dean, etc., 100 Ky. 398, 18 Ky. L. R. 847, 38 S. W. 508) ; and we fail to see any reason why this rule should be changed merely because the creditor from whom such claims has been purchased has also filed suit and obtained an attachment against the debtor. We are therefore of the opinion that the attachments against Boreing by the judgment creditors of Brackett did not make Boreing a trustee for Brackett so as to require that he

should be entitled to set-off against Brackett only the amounts actually paid for the judgments.

(b) As to whether or not Boreing acted as the agent of Brackett in the purchase of the Hogan and Dink Miller and Hendrickson judgments, the evidence is about as follows: Boreing swears positively that he had no agreement or understanding with Brackett whereby he was to purchase such judgments as the agent of Brackett. Moss, who made the purchases for Boreing, swears that they were purchased for Boreing, and not for Brackett. On the other hand, Brackett swears that Boreing agreed with him to purchase the judgments in question for his (Brackett's) benefit. There are also certain letters from Boreing and Moss to Brackett. Moss, in one of his letters, advises Brackett to settle with Hendrickson. Boreing also wrote to Brackett that Hendrickson was anxious to settle, and asked Brackett what he (Boreing) should do. Brackett's reputation for truth is discredited by several witnesses. The letters of Boreing and Moss to him tend somewhat to confirm his statements. It does not appear, however, in the record that Brackett ever acted upon the suggestion of Moss, or that Moss acted for Brackett in making the settlements with the Millers and Hendrickson. Nor does it appear that after the receipt of the letter from Boreing, Brackett acted upon the suggestion therein contained and directed Boreing what to do. On the contrary, it appears that Brackett thereafter effected, or attempted to effect, a compromise with Hendrickson. In this attempted settlement he acted upon his own initiative. He did not, nor did he pretend to, act through the intervention of Boreing as his agent or trustee. We must therefore conclude that he decided to ignore Boreing's proposition, and to act for himself with

reference to the settlement of the Hendrickson judgments.

Brackett's administrator contends that the evidence of Boreing and Moss is incompetent, for the reason that both Brackett and Hendrickson were dead at the time this testimony was given. It does appear that at the time a portion of their testimony was offered Brackett and Hendrickson were both dead. While Brackett's administrator filed exceptions to certain answers of Boreing and Moss, it does not appear that these exceptions were passed upon by the trial court, and they will therefore be deemed to have been waived. Lewis v. Wright, etc., 3 Bush 311; Patterson, etc., v. Hansel, etc., 4 Bush 654; Hon v. Harned, 38 S. W. 688, 18 Ky. Law Rep. 864. With the evidence of Boreing and Moss upon the one side and the evidence of Brackett and the letters to Brackett from Boreing and Moss on the other, with nothing to show that he (Brackett) ever acted upon the suggestions contained in the letters, we are unable to say that the conclusion of the chancellor that Boreing acted for himself in purchasing the judgments in question is erroneous. It appears, however, according to the testimony of Moss, that Boreing paid $100 for the Hendrickson judgment, and also agreed to pay the fee of Weller and Hays. In the year 1903 judgment was entered directing Boreing to pay the fee of Weller and Hays, and that he be given credit for the amount so paid as against Brackett. Whether this judgment was entered because of the agreement on behalf of Boreing to pay the fee of Weller and Hays, or whether it resulted alone from the fact that Weller and Hays had a lien upon the judgments in question for the amount of their fee, does not appear. In either event the amount so directed to be paid was in effect a part

of the purchase price paid for the judgments, for Boreing had purchased the Hendrickson judgments prior to that time and was then the owner and holder of them. Manifestly, then, it would be improper for Boreing to set off both the full amount of the Hendrickson judgments and the amount of the fee paid Weller and Hays. Brackett's estate can not be charged with the judgments in full, and a portion of the purchase price paid for the judgments. In this respect the judgment herein is erroneous. As the judgment of 1903 directed that Boreing be given credit for the amount of the Weller and Hays fee, the amount so credited should be deducted from the amount of the Hendrickson judgments.

Third. The assignment of the Hendrickson judgment by Hendrickson to Boreing appears to have been made on August 8, 1898. Hannah Hendrickson, as administratrix of P. Hendrickson, filed a settlement alleged to have been made between Hendrickson and Brackett, by the terms of which it was agreed that Hendrickson should be paid the sum of $250. She, therefore, claims the amount going to her husband under that settlement. It appears, however, that the settlement in question was made on August 17, 1898, about nine days after the assignment previously made by her husband to Boreing. The evidence as to the exact time when the assignment from Hendrickson to Boreing was made, and the evidence as to whether any such settlement was ever affected between Brackett and Hendrickson, are so vague and uncertain as to leave the mind in doubt, and for this reason the judgment of the chancellor dismissing the claim of Hannah Hendrickson will not be disturbed. Burt & Brabb Lumber Co. v. Bailey, 60 S. W. 485, 22

Ky. Law Rep. 1264; Spencer v. Society of Shakers, 64 S. W. 468, 23 Ky. Law Rep. 854.

Fourth. The last question to be determined concerns the claim of the assignee, Cumberland Valley Bank. The bank contends that it has a lien on the money owing Brackett by Boreing for the satisfaction of its debt against Hendrickson, and that this lien is superior to the claim of Boreing arising out of his purchase of the Hendrickson judgments. It appears that the bank's action was filed on September 10, 1897, after it had procured judgments and a return of "no property found" against P. Hendrickson. This action was instituted prior to the time that Boreing purchased the Hendrickson judgments. At the time of the institution of this suit Hendrickson had obtained judgments against Brackett, and attachments had been issued against Boreing. These attachments had been sustained. The original petition filed by the bank's assignee alleged that "he is informed, believes, and charges it to be true that defendant V. Boreing had in his hands considerable money which is owing to one John Brackett, but had been attached by and will be and is due and owing to defendant P. Hendrickson." To this suit Boreing and Hendrickson were both made parties. Thereafter an amended petition was filed making Brackett a party defendant, and Brackett entered his appearance. Between the filing of the original petition and the amended petition Boreing bought the judgments in question. The trial court dismissed the claim of the bank's assignee on the ground that Brackett, who was a necessary party, had not been made a party to the action prior to the time that Boreing bought the judgments, and that Boreing was in no sense the debtor of Hendrickson.

Section 439 of the Civil Code of Practice is as follows: "After an execution of fieri facias, directed to the county in which the judgment was rendered, or to the county of the defendant's residence, is returned by the proper officer, either as to the whole or part thereof, in substance, no property found to satisfy the same, the plaintiff to the execution may institute an equitable action for the discovery of any money, chose in action, equitable or legal interest, and all other property to which the defendant is entitled, and for subjecting the same to the satisfaction of the judgment; and in such actions persons indebted to the defendant or holding money or property in which he has an interest, or holding evidences or securities for the same, may be also made defendants."

This court has held that the above section was intended to enable the creditor to subject to the payment of his claim any money, choses in action, equitable or legal interest, and all other property to which the debtor is entitled; that the statute is remedial and should be liberally construed, with a view to promote its object, which evidently was to enable a creditor, after a return of "no property found," to reach by this kind of proceeding all property of the judgment defendant. Merriwether v. Bell, etc., 58 S. W. 987, 22 Ky. Law Rep. 844; Farmers' Bank of Kentucky v. Morris, etc., 79 Ky. 157. In this case Boreing was indebted to Brackett, Hendrickson had attached the money due from Boreing to Brackett in Boreing's hands, the attachment had been sustained, and so much of the money due Brackett by Boreing as equaled the Hendrickson judgments was then due, not to Brackett, but to Hendrickson, whose attachment had been sustained. At this time

the bank's assignee attached in Boreing's hands the money thus due to Hendrickson. We are therefore of opinion that Boreing was holding money or property in which Hendrickson had an interest, and the service of the attachment upon him was sufficient notice that it was the purpose of the bank's assignee to attach the funds so held by him. Boreing had notice of the purpose of the attachment, and the fact that Brackett was not then a party could in no way affect his liability. Before final judgment Brackett was made a party. In the meantime Boreing bought the Hendrickson judgments at his peril. Nothing that he could do after the service of the attachment could defeat the claim of the bank to the funds attached in his hands. The trial court, therefore, erred in dismissing the claim of the bank's assignee. Upon the return of the case the court will direct the payment by Boreing's administrators to the assignee of the Cumberland Valley Bank of its debt, interest, and costs. Boreing's administrators will then be credited against Brackett's administrator with the full amount of the Hendrickson judgments, less the Weller and Hays fee, but will not be entitled to credit for the amount directed to be paid to the assignee of the Cumberland Valley Bank.

For the foregoing reasons, the judgment as to Hendrickson's administratrix is affirmed, and the judgment as to Brackett's administrator and the assignee of the Cumberland Valley Bank is reversed, and cause remanded, with directions to the trial court to enter judgment in conformity with this opinion.

On Rehearing.

On August 8, 1898, P. Hendrickson, it is claimed, assigned his judgments against Brackett to Vincent

Boreing. To the pleading of Boreing, setting forth his assignment, Hannah Hendrickson, as executrix of P. Hendrickson, filed a pleading charging that Hendrickson never executed the writing in question. She also charged that on August 17, 1898, John Brackett made a full and complete settlement with her husband, Hendrickson. To this cross-petition of Hannah Hendrickson, Boreing filed an answer, denying the settlement in question and setting up the assignment by Hendrickson of August 8, 1898. Thereupon John Brackett's administrator filed a reply to Boreing's answer. In this reply Brackett's administrator set up the settlement between Brackett and Hendrickson, and charged that said settlement was made without any notice, actual or constructive, of any assignment of said judgments, or any of them, to said Boreing. If, as a matter of fact, Brackett settled with Hendrickson on August 17, 1898, without any notice, actual or constructive, of the assignment of the judgments to Boreing by Hendrickson, Brackett's equities would be superior to those of Boreing. A debtor may settle with his judgment creditor at any time, and such settlement will be valid and binding, unless, at the time made, the debtor has notice of the fact that the judgment so settled had been previously assigned to another party. Black on Judgments, vol. 2, p. 950; Gaullagher v. Caldwell, 23 Pa. 300, 60 Am. Dec. 85; Frissell v. Haile, 18 Mo. 18.

It appears that no response was filed by Boreing to Brackett's administrator's reply to Boreing's answer to Hannah Hendrickson's petition. In view of the fact that it was an unusual procedure in pleading, we are of the opinion that Boreing's administrators should not be precluded by the allegations of the reply. Upon the return of the case these allega-

tions may be denied by Boreing's administrators, and proof taken upon the question of whether a settlement between Hendrickson and Brackett was or was not made with notice of the assignment by Hendrickson to Boreing. In view of the further fact that the plea of non est factum was interposed to the written assignment purported to have been made by Hendrickson to Boreing, and there is no satisfactory proof of the execution of the writing in question by Hendrickson, we have concluded that the case should be returned for the purpose of taking proof both upon this point and upon the question of whether or not a settlement between Brackett and Hendrickson was made with notice of the alleged assignment. If it shall appear from the proof either that Hendrickson did not assign his judgments against Brackett to Boreing prior to the alleged settlement of August 17, 1898, or that Brackett made the alleged settlement of August 17, 1898, with Hendrickson without notice of the assignment alleged to have been made prior to that time, Brackett's claim to the Hendrickson judgments will be superior to that of Boreing, and Boreing's administrators will not be entitled to offset the Hendrickson judgments against the indebtedness due Brackett's administrator. Furthermore, if it shall appear that the assignment from Hendrickson to Boreing was not made prior to the alleged settlement of August 17, 1898, Hannah Hendrickson, as executrix of P. Hendrickson, will be entitled to the $250 and interest going to her husband under the alleged settlement of August 17, 1898, provided the proof is sufficient to establish that settlement. The hearing of these questions can in no way affect the rights of the assignee, Cumberland Valley Bank, because its attachment was sustained long prior to either the

settlement or assignment, and both the latter, if actually made, were subject to the attachment already secured.

For the reasons given, that portion of the opinion affirming the judgment as to Hendrickson's executrix is withdrawn, and the judgment as to her is also reversed, and this cause remanded for further proceedings consistent with this opinion.