## Pioneer Coal Company v. Asher, Sr.

## Nield v. Pioneer Coal Company and Asher, Sr.

(Decided April 21, 1925.)

### Appeals from Bell Circuit Court.

1. Champerty and Maintenance—Action for Breach of Covenant in Champertous Deed Cannot be Maintained.—Deed to land, which was in adverse possession of others, being champertous and void under Ky. Stats., section 210, and right of action thereon being denied by section 216, action for breach of covenant of warranty cannot be maintained.

2. Judgment—Judgment in Favor of Adverse Possessors Against Purchaser not Conclusive that Grantor's Deed was Champertous. —Judgment, in action by purchaser of land, adjudging that title was in defendants, held not conclusive as between purchaser and original grantor that grantor's deed was champertous; grantor and plaintiff in former action not being adversary parties, and question of champerty being immaterial if defendants had title.

3. Covenants—Warranty Held Breached by Adverse Possession— Covenant Broken Held Not to Run With Land.—Covenant of warranty was broken when deed to land, then held by others in adverse possession, was made, and covenant would not run with land.

4. Creditor's Suit—Liability on Breached Covenant May be Enforced by Judgment Creditor of Grantee—"Chose in Action."— Liability for breach of covenant of warranty is "chose in action," and may be enforced by remote grantee as creditor of original grantee under Civil Code of Practice, section 439, after return of execution unsatisfied.

5. Champerty and Maintenance—Covenant of Warranty, Valid as to Land, Not Actually in Adverse Possession.—Covenant of warranty was void only as to land in actual adverse possession at date of deed.

6. Champerty and Maintenance—Whether Deed Was Champertous Not Raised, Where Facts Not Pleaded in Action to Enforce Judgment Based on Deed.—In enforcing judgment against corporation secured for breach of warranty in deed, whether deed was champertous is not raised by other than party in possession at time of deed, where facts were not pleaded, under Ky. Stats., section 212.

7.  Judgment—In Enforcing Judgment, Consideration Upon which
    it was Rendered is Not Material.—In enforcing judgment, secured
    against corporation for breach of warranty in deed, against one
    receiving funds of corporation on distribution, it is not material
    upon what consideration judgment was rendered.

8.  Corporations—Stockholder Distributing Corporation Funds Liable
    for Unpaid Debts.—Sole stockholder of corporation, distributing
    all its assets and retaining large amount thereof for himself,
    held liable to creditors to extent of assets so distributed, as such
    assets constituted trust fund for payment of creditors, and fact
    that he received part of assets as commission for sale of prop-
    erty was immaterial where he agreed to guarantee oblgations.

JAMES H. JEFFRIES for appellant Pioneeer Coal Co.

W. T. DAVIS and E. N. INGRAM for appellant Nield.

CLEON K. CALVERT, E. L. WORTHINGTON and MARTIN T.
KELLY for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Reversing in first case and affirming in second case.

These two appeals on the same record will be dis-
posed of in one opinion.

On May 10, 1907, A. J. Asher, in consideration of
$35.00 an acre conveyed, with general warranty, to the
Edgemont Coal Company a number of tracts of land ag-
gregating 3,000 acres.  On August 15, 1911, the Edge-
mont Coal Company conveyed this land, with other lands,
with general warranty, to the Pioneer Coal Company
in consideration of $57.50 an acre.  The Edgemont Coal
Company had done no business except to hold the title
to the land.  The sale to the Pioneer Coal Company in-
cluded all its property.  After the sale was made and
before a division of the proceeds among its stockholders,
all the other stockholders transferred their stock to C.
S. Nield by a writing dated August 8, 1911, reserving
the dividends coming to them out of the sale of the prop-
erty and Nield agreed to pay those dividends to them.
This writing includes the following stipulation:

> "The said C. S. Nield as a part of this obligation
> guarantees that the said Edgemont Coal Company
> will perform its obligations to the Pioneer Coal
> Company as contained in a deed dated the 15th day
> of August, 1911."

Nield had subscribed for $12,000.00 of the stock of the company and had paid for $9,000.00. By the terms of the sale he was to get all of the purchase money of the property above a certain price for his commissions. He received in this way about $30,000.00 for his commissions, beside the dividends on his stock, which amounted to the sum he had paid with 6% interest from the time of the payment. The Pioneer Coal Company, learning that a part of the land was claimed adversely by Thomas R. Gordon and D. R. Logan, brought a suit against them to settle the question of title. A. J. Asher, the original grantor of the land, was notified of the action and testified on the trial, which resulted in a judgment in favor of the defendants for the land in controversy, which included all of three of the tracts conveyed and a part of the fourth. The judgment was rendered at the October term, 1917, of the circuit court. Thereupon the Pioneer Coal Company brought an ordinary action against the Edgemont Coal Company on its covenant of warranty to recover the price it had paid for this land, $18,785.00. No answer was filed to the petition and a judgment by default was rendered on February 13, 1918. Execution was issued on the judgment and returned "no property found." Thereupon this action was brought by the Pioneer Coal Company under section 439 of the Code on February 8, 1919, against the Edgemont Coal Company, A. J. Asher and C. S. Nield. A judgment was sought against Asher on his warranty to the Edgemont Coal Company. Judgment was sought against Nield on the ground that he, as stockholder, had distributed the assets of the company, receiving a large amount himself as stockholder, and that to secure this distribution had guaranteed that the Edgemont Coal Company would perform its obligations to the Pioneer Coal Company as contained in its general warranty deed. Nield and Asher both demurred to the petition. Their demurrer was overruled, the issues were made, proof taken, and on final hearing the circuit court dismissed the plaintiffs' petition against A. J. Asher and gave judgment against Nield. From the judgment dismissing its petition against A. J. Asher, the Pioneer Coal Company appeals, and Nield appeals from the judgment of the Pioneer Coal Company against him.

Asher's title to the land is based upon the James W. Davis 2,800 acre grant, surveyed March 25, 1850, and issued May 22, 1857. But in this grant five or six older small grants which embraced land within the boundary

of the larger grant were excepted. The defendants in the ordinary action brought by the Pioneer Coal Company, as we understand the record, claimed under these grants and had extended their clearing beyond the bounds of the older patents. They defended that suit upon the ground that they and those under whom they claimed had been in the adverse possession of the land they claimed for more than fifteen years before that suit was brought. The chief grounds relied upon by Asher in the defense of this action against him are: (1) That his deed to the Edgemont Coal Company was void under Kentucky Statutes, section 210, and that no action can be maintained upon the deed under section 210, Kentucky Statutes; (2) that the judgment in the original action, brought by the Pioneer Coal Company against the persons in possession, is conclusive that his deed was champertous; (3) that his covenant was broken when the deed was made and did not run with the land to the Pioneer Coal Company; (4) that the Pioneer Coal Company cannot maintain the action against him under section 439 of the Code.

1. Asher a few years before he made the deed had cut a large quantity of timber from the land without question and said when he sold the land it was held by his tenants. The purchasers had the title examined by two experienced lawyers and they bought and paid for the land in good faith, supposing they were getting a good title. But, however innocent the parties may have been, the statute against champerty applies. It provides as follows:

"All sales or conveyances, including those made under execution, of any lands, or the pretended right or title to the same, of which any other person, at the time of such sale, contract or conveyance, has adverse possession, shall be null and void." Kentucky Statutes, section 210.

"Neither party to any contract made in violation of the provisions of this chapter shall have any right of action or suit thereon." Kentucky Statutes, section 216.

In Graves v. Leather, 17 B. Mon. 528, it was held that no action can be maintained on a deed containing a covenant of warranty of title to land which was adversely held at the date of the deed if the deed was made since the

act of 1824 against champerty. This opinion was followed and approved in Altemus v. Nickell, 115 Ky. 506. After fully discussing the subject, the court added:

"Not only are the sale and the conveyance prohibited and declared to be void, but the further prohibition is added that neither party to that transaction 'shall have any right of action or suit thereon.' The vice of the act is guarded against by making it absolutely ineffectual for every and any purpose." To same effect see Caldwell v. Sprigg, 7 Dana 38; Crowley v. Vaughn, 11 Bush 517.

Appellant insists that there is a conflict in the opinions of this court and that the above is no longer in force. But we do not see that there is any conflict in the opinions relied on to show this. Luen v. Wilson, 85 Ky. 503, is rested upon the ground that the plaintiff could not be heard to say that his deed was champertous. This opinion was followed in Ft. Jefferson Improvement Co. v. DuPoyster, 108 Ky. 792, which rests on the same ground. That case was followed by Meade v. Ratliff, 133 Ky. 411, which turned on the question whether the deed had been rescinded. Though there are in each of these cases some expressions inconsistent with the rule above laid down, they were unnecessary for the decision of the case before the court and are to be regarded as merely dictum. In Isaacs v. Maupin, 191 Ky. 528, no question of champerty was raised, as shown by the opinion. On the other hand, the court has in a great number of cases held that a champertous deed is absolutely void. The conveyance being void there is nothing for the covenant of warranty to rest on. Lost Creek Coal Co. v. Napier's Heirs, 89 S. W. 264; Bridgewater v. Byassee, 93 S. W. 35; Begley v. Valentine, 160 Ky. 526; Big Sandy Co. v. Ramey, 162 Ky. 236; Lipps v. Turner, 164 Ky. 626; Minniard v. Napier, 167 Ky. 208; LeMoyne v. Neal, 168 Ky. 292; Begley v. Erasmie, 205 Ky. 240; Colson v. Johnson 208 Ky. 684.

We therefore conclude that no action can be maintained on Asher's covenant of warranty so far as the land was then in the adverse possession of another.

2. The record contains a transcript of the pleadings and judgment in the original action brought by the Pioneer Coal Company. The petition alleged that the plaintiff was the owner and in possession of the land and charged that the defendants had trespassed upon it and cut the timber, to its damage. The answer of the de-

fendants denied the allegations of the petition and pleaded that the land was owned by the defendants; that they and those under whom they claimed had been in actual adverse possession of the land for over thirty years and that they were in such adverse possession when it was conveyed by Asher to the Edgemont Coal Company. These allegations were denied by reply. The judgment of the court is in these words:

"The court having heard all the evidence for the plaintiff and for the defendants and the argument of counsel, it is adjudged by the court that the plaintiff, Pioneer Coal Company, is not entitled to any of the relief sought by it in its petition herein and that said petition be and the same is now hereby dismissed, and that the defendants, Thomas R. Gordon and D. B. Logan, have and recover of plaintiff their costs herein expended.

"It is further found and adjudged by the court on the counterclaim of the defendants, Thomas R. Gordon and D. B. Logan, that at the time this action was instituted and at the time the acts complained of in the petition of plaintiff, the defendants, Thomas R. Gordon and D. B. Logan, were the owners of and in rightful possession of and are the owners of and now in the rightful possession of the two tracts of land herein described, in conjunction with E. S. Helburn."

It appears from the record that the defendants in that case insisted that the land in controversy was covered by the Ben Say patent issued many years before the Davis patent and that the Davis patent was void for this reason. They also introduced a chain of deeds, beginning about 1881, and introduced proof showing that they and those under whom they claimed had been in adverse possession of the land since that time. They introduced a number of witnesses; the case was tried by the court without a jury. They introduced testimony tending to show that at the time Asher executed the deed May 10, 1907, they were in actual adverse possession of the land; and it is now shown that the judge at the conclusion of the trial said from the bench that he was of the opinion that the defendant was entitled to judgment on both grounds.

The judgment of the court is conclusive that the plaintiff had no title to the land, and if it had stopped

with dismissing the plaintiff's petition there would be more ground for holding that the judgment was a finding that the plaintiff's deed was champertous. But the judgment does not stop here. It adjudges that the defendants owned the land. This finding is not dependent in any way on the question whether the plaintiff's deed was champertous, for although the deed was champertous this would give the defendants no right to the land. The judgment of the court is, therefore, merely a judgment that it was the defendants' land.

Can parol evidence be heard to show on what ground the court at the time rested his judgment, or is the judgment simply a finding as to the title to the land? A judgment is conclusive upon the parties as to the matter adjudicated, but a distinction must be drawn between the judgment itself and the reasons assigned for it. In this case the judgment adjudged the land to the defendants. This settled the question of title and concludes the parties as to the title. It is conclusive that the purchaser was evicted from the land. But is it conclusive any further?

In Freeman on Judgments the rule is thus stated:

"No judgment or decree is evidence in relation to any matter which came collaterally in question, nor to any matter incidentally cognizable or to be inferred from the judgment only by argument or construction.

"In ascertaining whether a particular matter has become *res judicata,* the reasoning of the court is less to be regarded than the judgment itself, and the premises which its existence necessarily affirms.

"General expressions in an opinion which are not essential to the disposition of the case cannot control the judgment in subsequent suits, nor does a remark made *obiter* or *arguendo* operate as on estoppel on the point adverted to." 36 C. J. 930.

In Russell v. Place, 4 Otto 606, the U. S. Supreme Court thus stated the rule:

"To render the judgment conclusive, it must appear by the record of the prior suit that the particular matter sought to be concluded was necessarily tried or determined; that is, that the verdict in the suit could not have been rendered without deciding that matter; or it must be shown by extrinsic evidence, consistent with the record, that the verdict

and judgment necessarily involved the consideration and determination of the matter.''

In this case the judgment entered does not necessarily involve a finding on the question of champerty, for the court adjudged the land to the defendants, and this was to sustain their title to the land.

The court speaks by the record, not by what the judge may say orally from the bench before the judgment is drawn. The judgment entered on the order book and signed by the judge is the action of the court.

The judgment entered in the former case conclusively determined that the plaintiffs in that action were without title. It conclusively established an eviction of the purchaser of the land. To this extent it constitutes an estoppel which is mutual and equally conclusive on the seller and the purchaser. But it goes no further. The seller and the purchaser were not adversary parties. They did not litigate with each other there the grounds of the judgment. No inquiry can be made here between them as to what the judge there stated orally in giving his reasons for his judgment, for they were not adversary parties there, and while both are bound by the judgment of eviction, neither is bound by the reasons assigned by the judge for giving it. Asher was not a party to that action. He had notice of it and so is bound by it as an eviction of the purchaser, but no further. To illustrate, if the judge there had said from the bench that the proof did not establish the defense of adverse possession at the time the deed from Asher to the purchaser was made this would not be conclusive on Asher here. Estoppels must be mutual. If Asher would not be concluded if the judge had so stated, the purchaser is not bound when he stated otherwise. The cases in which a former judgment has been held conclusive in a second action as to a matter actually decided in the first action are all cases between the same parties as adversaries. They have no application where the parties in the second action were not adversary parties in the first action, or where either of them was not a party to the first action. Hargis v. Hargis, 207 Ky. 366; Fidelity & Casualty Co. v. Stewart Dry Goods Co., 208 Ky. 429.

We therefore conclude that the judgment in that action is not conclusive as between the Pioneer Coal Company and A. J. Asher as to whether Asher's deed was champertous. They were not adversary parties in that action.

3. So far as the land was then held in adverse possssion Asher's covenant was broken when the deed was made, and the cause of action thereon then accrued. As the covenant was broken it did not run with the land. Butt v. Riffe, 78 Ky. 352; Eli v. Trent, 195 Ky. 26. But it was a covenant in writing, signed by Asher, and so far as the land was not in adverse possession the limitation to an action upon it is fifteen years. This time had not expired when the suit was brought and there was a subsisting cause of action in favor of the Edgemont Coal Company against him, so far as the land was not in adverse possession when the deed was made. Limitation is, therefore, not a defense maintainable by Asher to this action, if the Pioneer Coal Company may maintain the action.

4. By section 439 of the Code a creditor who has obtained a judgment and return of no property found, may institute an action to enforce the judgment and for the discovery of any chose in action, equitable interest and all other property to which defendant is entitled and for subjecting the same to the satisfaction of the judgment. The liability of Asher to the Edgemont Coal Company is a chose in action and may be subjected under this statute, for the purpose of the statute is to allow the creditor to reach in this way anything belonging to the debtor and thus secure a satisfaction of his judgment. The court, therefore, did not err in overruling Asher's demurrer to the petition. Farmers' Bank of Kentucky v. Morris, 79 Ky. 157; Brackett v. Boreing, 131 Ky. 751; Merriwether v. Bell, 139 Ky. 402.

5. It remains to determine how much of the land is shown to have been in adverse possession when Asher conveyed it to the Edgemont Coal Company. Referring to its previous opinions, the court in Krauth v. Hahn, &c., 139 Ky. 613, thus stated the rule, as to what is a sufficient adverse possession to defeat a conveyance under the statute:

"We there said, and here reaffirm, that to defeat a conveyance under the champerty statute there must be at the time of the conveyance some open demonstration of actual occupancy whereby the person bargaining for the land may have some clue for ascertaining that it is in adverse possession of another, and such as would naturally and reasonably put a purchaser upon notice of the fact of such hos-

tile claim and holding.'' To same effect see Le-
Moyne v. Nield, 158 Ky. 316.

According to the evidence of the surveyor 249.49
acres of land were lost in the suit. Of this, three acres
was cleared in tract No. 1 adjoining the southern lines of
the Taylor patent; fifteen acres in tract No. 2, being an
extension of the old clearing upon the Taylor patent; six
acres was cleared in the third tract, being an extension
of an old field in the Rice patent; nine acres of the fourth
tract was cleared on the northwest side of the John
Farmer and Stephen Rice patents. The patents named
are older than the Davis patents and the settlements had
been made on the patents and these clearings had ex-
tended out beyond the bounds of the patents. There is no
other proof in the record upon which it can be held that
there was on May 10, 1907, an actual adverse possession
of any part of this land outside of the above thirty-three
acres. The covenant of warranty is void as to this thirty-
three acres, but it is valid as to the remainder of the land.
The court under the proof should have entered judgment
against Asher on his warranty for the land lost outside
of that held in adverse possession, as above indicated.

6. On the appeal of Nield an entirely different ques-
tion arises. Nield did not plead that the land was held in
adverse possession. Section 212, Kentucky Statutes, pro-
vides that the person in the adverse possession may give
in evidence under the general issue or may plead the vio-
lation of the statute, but only the person so in possession
is given the right to rely on the statute without pleading
the facts. Here there has been a judgment against the
Edgemont Coal Company. That judgment conclusively
determines that the Edgemont Coal Company is indebted
to the Pioneer Coal Company in the amount adjudged
against it, and this is an action to enforce that judgment.
It is not material here upon what consideration it was
rendered. It is a valid judgment against the Edgemont
Coal Company and must be paid by the Edgemont Coal
Company. But Nield, as the sole stockholder of the
Edgemont Coal Company, distributed all its assets, re-
taining for himself between forty and fifty thousand dol-
lars of these assets. The assets of that corporation was
a trust fund for the payment of its creditors. When the
sole stockholder distributed this fund to himself and
others, leaving debts of the company unpaid, he became
liable to the creditors of that company to the extent of
the assets so received and distributed. It is true he re-

ceived a part of this money as his pay for making the sale of the property. But he received this pay on a written agreement by him that he would guarantee the payment of the very obligation which is now sought to be enforced. It was clearly contemplated by the parties in this contract that he was not to receive pay until the debts of the company were settled. So the whole fund in his hands was, in the first place, a trust fund for the payment of the debts of the corporation.

"In distributing the assets of a dissolved corporation the debts and liabilities of the corporation are to be satisfied before any distribution to stockholders is made." 7 R. C. L. 744.

"It is an undisputed doctrine that corporate property must first be appropriated to the debts of the corporation before there can be any distribution of it among the stockholders, holding either preferred or common stock, as both classes of stock are equally liable to the creditors of the corporation." Westerfield-Bonte Co., v. Burnett, 176 Ky. 197.

On the appeal of C. S. Nield against the Pioneer Coal Company the judgment is affirmed. On the appeal of the Pioneer Coal Company against A. J. Asher the judgment is reversed and the cause is remanded to the circuit court for directions to enter a judgment as above indicated. As Asher is, as between him and Nield, the person primarily liable, Nield will be credited on the judgment against him with any money paid by Asher and the judgment against Asher will be first enforced.