## Wittenauer v. Kaelin et al.

(Decided March 22, 1929.)

BEN F. EWING and J. DONALD DINNING for appellant.

TRABUE, DOOLAN, HELM & HELM for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

On February 4, 1922, Frank Wittenauer recovered a judgment against Edward Kaelin for $400, with interest and costs. On December 23, 1926, an execution was issued and returned "No property found."

In the month of August, 1926, Kaelin, while in the employ of the Louisville & Nashville Railroad Company, received personal injuries for which he asserted a claim for damages against that company.

On December 24, 1926, Wittenauer brought this action against Kaelin under section 439, Civil Code. An attachment was issued and served on December 27, 1927, on the Louisville & Nashville Railroad Company with the following indorsement:

> "Louisville & Nashville Railroad Company Garnishee:
>
> "The object of this action is to attach all money, choses in action, *claim for damages,* property, other evidences of debt in your possession belonging to Edward Kaelin or in which he has any interest, *or* (sic) to restrain you from paying the same to him or to anyone for him until the further order of this court.          B. F. EWING, Plaintiff's Atty."

On January 4, 1927, the railroad company, which had not been made a party, filed an answer as garnishee, stating, in substance, that it was not indebted to Kaelin.

On about January 18, 1927, the railroad company paid Kaelin the sum of $2,500 in settlement of his claim for personal injuries.

On January 27, 1927, Wittenauer filed an amended petition making the garnishee, Louisville & Nashville Railroad Company, a party defendant. The amendment alleged, in substance, that, prior to the service of the attachment, Kaelin had asserted claim for damages for personal injuries against the railroad company, and that, after the service of the attachment, the legal department of the company had been personally notified of the order of attachment, and the purpose of same, and that the claim was paid direct to Kaelin. By another amendment the allegations were made more specific.

Demurrers to the petition and the amendments were sustained, and the petition as amended was dismissed. Wittenauer appeals.

Section 439, Civil Code, is as follows: "After an execution of fieri facias, directed to the county in which the judgment was rendered, or to the county of the defendant's residence. is returned by the proper officer, either as to the whole or part thereof, in substance, no property found to satisfy the same, the plaintiff in the execution may institute an equitable action for the discovery of any money, chose in action, equitable or legal interest, and all other property to which the defendant is entitled, and for subjecting the same to the satisfaction of the judgment; and in such actions persons indebted to the defendant or holding money or property in which he has an interest, or holding evidences or securities for the same, may be also made defendants."

It is argued that this section embraces claims and demands that cannot be reached by ordinary attachment, and is broad enough to include the claim in question. It is not contended that at the time of the levy of the attachment the claim had been reduced to judgment, or the amount thereon had been fixed by agreement between Kaelin and the railroad company. Therefore, assuming, without deciding, that the attaching creditor may avail himself of all the remedies and rights afforded by the foregoing section of the Code, without making the garnishee a party defendant, the question sharply presented is whether or not an unliquidated claim for personal injuries is subject to attachment under that provision. There are definitions of "chose in action" broad enough to include every right which may be enforced by action at law, but that can hardly be the sense in which the words are used in the statute.

In the early case of Estill v. Rodes et al., 1 B. Mon. 314, Estill, a judgment creditor of Rodes, brought suit on a return of "no property found" against Rodes, Miller, and Bronson, alleging that Rodes had paid to each of the other defendants large sums of money as usurious interest, and asked that the money so paid be paid as satisfaction of the judgment. The statute at that time was substantially the same as the present statute, and authorized the court of chancery "to subject to the satisfaction of the judgment any choses in action belonging to the debtor, and also any equitable or legal interest in any estate, real, personal, or mixed, belonging" to him. In holding that the claim for usury was a mere personal right, which the debtor might or might not enforce at his

election, and was therefore not subject to attachment, the court in the course of the opinion said:

"The phrase, 'choses in action,' is obviously not used as synonymous with 'causes of action,' or 'rights of action;' for, in that sense, it would embrace rights of action for all *torts,* to the person and property of the debtor, which, as we presume, has never been contended for. It is not necessary, however, for us now to decide what causes of action, arising in *tort,* if any, are embraced by the statute. Nor shall we attempt either a definition or enumeration of the various rights and interests in contracts, or relating thereto, which may constitute the *choses,* or things, in action, which the statute intends, through the agency of the chancellor, to subject to the payment of debts. We deem it sufficient to say, that while it unquestionably subjects every unconditional interest which the debtor has in subsisting contracts, express or implied, and perhaps such conditional interests as are dependent upon precedent acts, which he or others are compellable to perform, we are satisfied that it does not embrace his right to make or originate a contract, express or implied, nor his right to make or originate any cause of action by doing any act which he had a perfect right to do, or not to do, at his election, though by the doing of it he might impose an obligation upon another, which when it should arise would be a chose in action, valuable to his creditors, and within the power of the chancellor, under the statute.

"The debtor is doubtless bound to a reasonable exertion of his faculties and his rights for the benefit of his creditors. But it is not in respect to this duty that the statute places him under the control of the chancellor, in giving the power to subject his *choses* in action to the payment of his debts. Things to which, although they lie in action, the debtor has a right independently of his disposition to assert it or not, are undoubtedly within the statute. But things, the right to which, lie not only in action, but in an election to be made before the right to the thing or to an action for it commences, and as to which the debtor has a perfect right, but for the intervention of the chancellor, to elect one way or the other, are not in our opinion choses in action until, by the elec-

tion of the debtor, they become so. And as the right of election, here supposed, is certainly not itself a chose in action, we think the chancellor has no right under the statute to control it. What might be done in a case of fraud, and upon the ground of fraud, we do not feel called upon now to say, but proceed to inquire into the nature and condition of the right which Rodes had to reclaim the usury paid by him to his codefendants."

Without attempting a definition of "chose in action," we are constrained to the view that it does not include any right of action that may not be assigned. While, generally speaking, choses in action are assignable, we have not been able to find a single case holding that, in the absence of a statute, an unliquidated claim for personal injuries may be assigned. On the contrary. the courts are unanimous in declaring that such claims may not be assigned. The reasons for the rule are that a claim for personal injuries is peculiarly a personal right that the injured party may or may not assert as he pleases, and that to permit one's pain and suffering to become a matter of speculation is not looked upon with favor by the law. As said in the case of Rice v. Stone, 1 Allen (Mass.) 566:

"It would still be in the power of litigious per·sons, whether rich or poor, to harass and annoy others, if they were allowed to purchase claims for pain and suffering, and prosecute them in courts as assignees. And as there are no counterbalancing reasons in favor of such purchases, growing out of the convenience of business, there is no good ground for a change of the law in respect to such claims."

If the injured party cannot voluntarily assign such a claim, there is all the more reason for holding that the claim is not subject to attachment, for, in addition to the other objectionable elements, it would compel the injured party to prosecute for the benefit of another a claim which he might not desire to prosecute for himself. In view of these considerations, we are constrained to the opinion that it would require something more than the language contained in section 439, supra, to authorize the conclusion that the Legislature intended that an unliquidated claim for personal injuries should be subject to at-

tachment. The cases of Merriwether v. Bell, 139 Ky. 402, 58 S. W. 987, 22 Ky. Law Rep. 844; Brackett's Adm'r v. Boreing's Adm'r, 131 Ky. 751, 110 S. W. 276, 115 S. W. 766, 33 Ky. Law Rep. 292; Pioneer Coal Co. v. Asher, 210 Ky. 498, 276 S. W. 487, and Bowman v. Breyfogle, 145 Ky. 443, 140 S. W. 694, Ann. Cas. 1914B, 938, are all cases arising out of, or connected with, contracts, and the claims or property were such as could have been assigned by the debtor.

It follows that the ruling of the circuit court was proper.

Judgment affirmed.

Whole court sitting.