[Civ. No. 1388. Third Appellate District.—October 8, 1915.]

# U. S. MARSHALL, Respondent, v. J. H. WENTZ, Appellant.

ATTACHMENT—ACTION BY JUDGMENT CREDITOR AGAINST GARNISHEE— SUPPLEMENTARY PROCEEDINGS UNNECESSARY.—A judgment creditor, after the return of execution unsatisfied against the judgment debtor, may bring an action against a garnishee upon whom notice was served under an attachment issued in the action before judgment, without first availing himself of proceedings supplementary to execution.

ID.—GARNISHMENT OF UNPAID STOCK ASSESSMENT—PLEADING—LEGALITY OF ASSESSMENT.—Where in such an action, the indebtedness shown to have been attached was a sum of money due to the judgment debtor from the garnishee upon an unpaid stock assessment, the complaint sufficiently shows what the notices of assessment, of delinquency and of sale contained, and how they were served, as against a general demurrer, by alleging that the assessment became delinquent on a certain date, and that on a subsequently named date, notice was given by the corporation for the sale of the stock, both dates being within the times prescribed by the code.

ID.—LIABILITY ON CONTRACT—RIGHT OF GARNISHMENT.—The liability of a stockholder of a corporation to the corporation on an assessment is a debt subject to garnishment, as such liability is a liability arising from contract.

ID.—PLEADING—NONPAYMENT OF JUDGMENT—LACK OF DIRECT AVERMENT—SUFFICIENCY OF COMPLAINT.—In such an action the failure to allege in the complaint by direct averment that the judgment was unpaid at the time of the commencement of the action, is not a sufficient ground for reversal, where it is alleged that a judgment had been secured, an execution issued and returned unsatisfied a short time before the commencement of the action, and, in the answer, that the judgment debtor was insolvent at the time the judgment was obtained.

APPEAL from a judgment of the Superior Court of Sacramento County. Peter J. Shields, Judge.

The facts are stated in the opinion of the court.

William V. Cowan, for Appellant.

H. S. Derby, and R. L. Shinn, for Respondent.

ELLISON, J., *pro tem.*—Plaintiff, a creditor of a corporation named "California Corporation," brought an action against it to obtain judgment for a sum of money alleged to be due to him from said corporation. In said action a writ of attachment was issued and duly served upon the defendant herein by delivering to him a copy of said writ and a notice that all debts due and owing by him to said corporation were attached under said writ. Subsequently, on the sixteenth day of June, 1914, plaintiff obtained a judgment against said corporation for the sum of $3,921.00, upon which an execution was issued and, on July 5, 1914, returned unsatisfied except as to the sum of $1,234.83. Thereafter this action was brought to recover of the defendant, Wentz, the sum of four hundred and nine dollars, alleged to have been due, owing, and unpaid by him to said corporation when said writ of attachment was served.

As to the origin and nature of the indebtedness alleged to have been due to said corporation from the defendant, Wentz, the complaint herein alleges: That the defendant was the owner of four thousand shares of the capital stock of said corporation; that, on September 3, 1912, the board of directors levied an assessment of ten (10) cents per share upon all the subscribed capital stock, payable immediately; that said assessment became delinquent against the defendant's stock on October 12, 1912, and that, on October 20, 1912, notice was given by said corporation for the sale of said delinquent stock on November 7, 1912. It is also alleged that, on October 25, 1912, said corporation waived all further proceedings for the sale of said delinquent stock and elected to proceed by action to recover from each stockholder the amount of his assessment, with costs thus incurred; that defendant has not paid said assessment so levied against his stock nor any part thereof.

A general demurrer to the complaint was overruled and answer filed by the defendant. Thereafter, on motion, judgment on the pleadings was given in favor of the plaintiff and against the defendant for the amount sued for.

Defendant appeals from said judgment and for reversal contends: 1. That the complaint is fatally defective because this is an action against a debtor of a judgment debtor and no supplementary proceedings were had; 2. The complaint fails to allege sufficient facts to show that a legal assessment

was made by the corporation; 3. Defendant was not a debtor of the corporation under the ordinary meaning of that word, and his only liability is to the corporation; and, 4. There is no allegation in the complaint that the plaintiff's judgment against the corporation has not been paid. We will consider these in the order presented.

1. Plaintiff could maintain an action against the defendant garnishee without first availing himself of proceedings supplementary to execution. Sections 714–720 of the Code of Civil Procedure relate only to proceedings supplementary to execution, and it is not necessary that their provisions should be resorted to before beginning action against one who has been garnisheed, under sections 543 and 544 of the same code. (*Carter* v. *Los Angeles National Bank,* 116 Cal. 370, [48 Pac. 332]; *Herrlich* v. *Kaufmann,* 99 Cal. 271, [37 Am. St. Rep. 50, 33 Pac. 857]; *Roberts* v. *Landecker,* 9 Cal. 262.)

2. Sufficient facts are alleged in the complaint to show the legality of the assessment as against a general demurrer. If counsel desired a more specific and detailed statement of the act done by the corporation in the matter of the assessment he should have attacked the complaint by a special demurrer. The only defect claimed in the complaint in this matter is that it does not show what the notices of assessment, of delinquency, and of sale contained nor how they were served, whether by publication or otherwise. It does allege that the assessment became delinquent on a certain date named and that, on October 2, 1912, notice was given by said corporation for the sale of delinquent stock on November 7, 1912. The dates fixed for delinquency and for sale were all within the times prescribed by the code, the demurrer admitted that notices were given, and if defendant desired a more definite statement of just what the notices contained and how they were served, he should have demurred for uncertainty.

3. The defendant was a debtor of the corporation within the meaning of sections 543 and 544 of the Code of Civil Procedure. Counsel's position is that the indebtedness of the defendant to the corporation did not arise from contract and hence was not subject to garnishment. The liability of the defendant to the corporation for the amount of his unpaid assessment was one arising from contract. ' "All applicable laws in existence when an agreement is made necessarily enter into it and form a part of it as fully as if they

were expressly referred to and incorporated in its terms."
(Elliott on Contracts, sec. 1507; *Pignaz* v. *Burnett,* 119 Cal.
157, 160, [51 Pac. 48]; *McCracken* v. *Hayward,* 2 How.
(U. S.) 612, [11 L. Ed. 397].)

When the defendant acquired his stock and became a member of the corporation, all the provisions of the Civil Code declaring under what circumstances, for what purposes, and how the directors might levy assessments and the methods they might pursue in collecting them, entered into and became a part of his contract relation with it. Section 349 of the Civil Code gave the board of directors the right to proceed against him personally to collect any assessment remaining unpaid and imposed upon him the correlative duty of paying it. To all this he assented by accepting the stock and there was an implied contract on his part to abide by the action of the board of directors in those particulars and to pay assessments when legally called upon by them to do so.

Again, the corporation was his agent to carry on its business, incur liabilities, and call on him for his proper proportion of the money needed to meet its current expenses and other obligations. There existed an implied contract upon his part to pay to it money whenever for the proper purposes of the corporation the directors by legal assessments called upon him for it. Accordingly, it was held in *Kennedy* v. *California Savings Bank,* 97 Cal. 93, [33 Am. St. Rep. 163, 31 Pac. 846], that the liability of each stockholder directly to the creditors of the corporation for his proportion of the debt as declared by section 3 of article XII of the constitution, was one arising from contract, and attachment proceedings could be resorted to to collect it. In the opinion it is said: "This section prescribes the terms upon which individuals are permitted to transact business through the medium of a corporation and the necessary legal effect of the conditions thus prescribed is that a corporation when created becomes the agent of the stockholders to make such contracts and incur such liabilities as are authorized by law and its articles of incorporation, and its contracts thus made bind its stockholders to the extent named."

That his liability to the corporation was a debt subject to garnishee process is clear from all the decisions. In *Hassie* v. *God Is With Us Congregation,* 35 Cal. 378, it is said: "If at the time the attachment was served upon the garnishee, the

defendant in the attachment could have maintained against him under the practice at common law the action of *debt* or *indebitatus assumpsit,* then the liability of the garnishee is transferred from the defendant to the plaintiff in the attachment suit." (See, also, *Union Savings Bank* v. *Leiter,* 145 Cal. 696, [79 Pac. 441]; *Santa Cruz R. Co.* v. *Spreckles,* 65 Cal. 197, [3 Pac. 661, 802].) "Where there is a legal liability the law creates a promise upon which an action of *assumpsit* will lie." (*Merriwether* v. *Bell,* 139 Ky. 402, [139 Am. St. Rep. 488, 491, 58 S. W. 987].)

Section 841 of the Civil Code provides that one coterminous landowner must refund to the other a just proportion of the value of any division fence, if he uses it as part of his inclosure, and it was held in *Bliss* v. *Sneath,* 103 Cal. 43, [36 Pac. 1029], that his liability arose from contract. "There are also cases in which the law will imply a contract to pay money from the fact of there being already a legal obligation to pay it, although the transaction in its origin was entirely unconnected with contract and there had been no promise in fact." (*Bliss* v. *Sneath.*)

In *Faull* v. *Alaska G. & S. M. Co.,* 14 Fed. 657, 8 Sawy. 420, it is distinctly held that the money due on an unpaid assessment to a corporation for unpaid subscriptions to stock may be garnisheed. "There being thus a fixed and specific sum due from the garnishee to the defendant at the time of service of the execution on the latter, the same was a debt or legal asset of the defendants and liable to be levied upon or attached by the plaintiff in satisfaction of his judgment against the defendant. It is a debt absolute and not contingent, as is the remaining portion of the subscription not yet called for or ordered paid. It is therefore as much a legal asset of the corporation and as liable to be taken or attached on an execution against it as a debt due it from the garnishee for money loaned or goods sold and delivered." (*Faull* v. *Alaska etc., Co.* 14 Fed. 657, 8 Sawy. 420. See, also, *Brown* v. *Hitchcock,* 36 Ohio St. 667; *San Luis Obispo* v. *Gage,* 139 Cal. 398, 405, [73 Pac. 174]; *Walter* v. *Merced Academy Assoc.,* 126 Cal. 586, [59 Pac. 136].)

Counsel suggests that the liability of a paid-up stockholder to the corporation for the amount of his assessment is different from the liability of a stockholder who is assessed upon his unpaid subscription for stock. The latter he considers a

debt founded on contract and may be garnisheed. The former, he claims, is not a debt. The only difference between the two, if any, is that the one .might be founded upon an express contract to pay, the other upon one implied. Either would be a "debt" and the usual method of collecting both is by assessment and primarily by a sale of the stock with a right on the part of the corporation to waive the sale and proceed by personal action against the stockholder. (*Santa Cruz R. Co.* v. *Spreckles,* 65 Cal. 193, [3 Pac. 661, 802].)

4. The record shows with sufficient certainty that the plaintiff's judgment against the corporation has not been paid.

The garnishee process, in this state, is intended as a substitute for a creditor's bill. In such a bill it was necessary for the plaintiff to allege the securing of a judgment against the principal debtor, the issuance of an execution and its return unsatisfied. This has all been done in this case, but there is no direct averment that the judgment was unpaid at the time of bringing this action. It may be seriously questioned whether in an action of this kind an allegation of the nonpayment of the judgment is necessary to the right to recover. Section 544 of the Code of Civil Procedure provides that all persons owing any debt to the defendant at the time of the service upon them of a copy of the writ and notice shall be, unless such debt shall be paid to the sheriff, liable to the plaintiff for the amount of any debt *"until the attachment be discharged, or any judgment recovered by him be satisfied."*

The liability of the garnishee is fixed by the service upon him and as of the date of the service and continues until one of two things happens: 1. The discharge of the attachment; or, 2. The satisfaction of the judgment. It would seem that if matters have transpired since the· defendant's liability became fixed legally sufficient to relieve him therefrom, the burden should be upon him to allege and prove them. In *Carter* v. *Los Angeles Nat. Bank,* 116 Cal. 374, [48 Pac. 332], it is said: "Of course, the garnishee can plead any defenses he would have against his creditor and also that the attaching creditor's debt has been satisfied or that he failed to secure judgment, etc." If, in order to make a good complaint, it is necessary, in addition to alleging the return of an execution unsatisfied, to allege that the judgment has not been paid,

then it is equally necessary to allege that the attachment has not been dissolved. But we deem it unnecessary definitely to decide the point, for the ruling of the court can be sustained upon other considerations.

Section 475 of the Code of Civil Procedure provides: "No judgment, decision, or decree shall be reversed or affected by reason of any error, ruling, instruction, or defect, unless it shall appear from the record that such error, ruling, instruction, or defect was prejudicial, and also that by reason of such error, defect, etc., the party complaining has sustained substantial injury, and that a different result would have been probable if such error, defect, etc., had not occurred or existed."

Section 4½ of article VI of the constitution provides that no judgment shall be set aside in any case for error as to any matter of pleading or procedure unless, after an examination of the entire cause, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice. It is the duty of the court to examine the entire record to determine whether prejudicial error has been committed. The defendant's verified answer is a part of the record and may be considered. The complaint shows execution issued and returned unsatisfied a short time before bringing this action, and the defendant in his answer alleges: "That at the time plaintiff obtained said alleged judgment against said California Corporation, that the said California Corporation was insolvent and had many creditors and was unable to pay said creditors." Taking the whole record together, it appears with sufficient certainty that plaintiff's judgment has not been paid; that plaintiff tried to collect it by execution and could not, and that the corporation has been, at all times since it was rendered, insolvent and unable, voluntarily, to pay it.

"It is insisted that the complaint is bad for three reasons: . . . 3. That the complaint fails to allege that the judgment is unpaid. . . . The complaint alleges a recovery of judgment; the issue of an execution thereon; a return of *nulla bona.* The corporation was insolvent, and had no property to pay said judgment. That payment of the judgment had been demanded by defendants, which had been refused. That the directors of the company refused to collect the unpaid subscriptions to the capital stock made by defendants.

This language cannot be mistaken. While it does not categorically state that the judgment is unpaid, it uses language equivalent to that statement. No particular form of words is required under our procedure. It is sufficient if the fact is alleged in such form that it may be readily understood." (*Henderson* v. *Turngren*, 9 Utah 432, [35 Pac. 495].)

"A creditor's bill to collect unpaid stock subscriptions alleging a judgment against an insolvent corporation, the issue of execution and a return *nulla bona*, need not allege that the judgment is unpaid." (Sutherland on Code Pleading, sec. 2160.)

Rules of practice and procedure are intended as a means and not as ends. Upon the whole record it is apparent that by the failure to allege in explicit and positive language that the judgment was unpaid, the defendant was not misled to any extent nor in any way prejudiced, and that the judgment is unpaid appears with reasonable certainty from the record.

Finding no prejudicial error in the record, the judgment is affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 7, 1915.