HOME STATE BANK OF MANHATTAN, RESPONDENT, *v.* SWÅRTZ, APPELLANT.

(No. 5,634.)

(Submitted February 14, 1925.   Decided March 2, 1925.)

[234 Pac. 281.]

*Attachment—Banks and Banking—Stockholders' Statutory Liability—Assessment—Liability Contractual—Defective Affidavit on Attachment—Amendment.*

Banks and Banking—Stockholders' Statutory Liability Contractual in Nature.
    1.  If by statute a duty or liability is placed upon one as the result of his ownership in the shares of a banking corporation, such duty or liability is regarded as contractual in its nature.
Contracts—Existing Laws Become Part of.
    2.  Existing laws become a part of contracts to which they are applicable.
Attachment—Banks and Banking—Stockholder's Liability—Implied Contract for Direct Payment of Money.
    3.  The double liability imposed by section 6,036, Revised Codes, as amended (Chap. 9, Laws of 1923), upon a stockholder in a

state banking corporation is in its nature contractual, and in an. action to collect an assessment made against him upon that liability, attachment lies as upon an implied contract for the direct payment of money.

Same—Power of Banks to Sell Stock of Stockholders on Failure to Pay Assessment in Effect a Lien on Stock.
4. The power given a state bank by section 6109d, added to the Revised Codes of 1921 by Chapter 90, Laws of 1923, page 243, to sell the stock of its stockholders upon impairment of its capital if the holders fail to pay the assessment levied upon it, constitutes a lien upon the stock, within the meaning of the attachment statute.

Same—Affidavit—Insufficiency.
5. In an action by a state bank to recover a deficiency due on an assessment against a stockholder after a sale of the stock by it as provided in section 4 of Chapter 90, Laws of 1923 (sec. 6109d, p. 243), in which a writ of attachment was issued, the affidavit on attachment *held* defective for failure to allege, after setting forth that the amount due had not been secured by any mortgage, lien, *etc.*, that "if originally so secured, such security has, without any act of the plaintiff, become valueless."

Same—Defective Affidavit—Amendment.
6. Where, because of a defective affidavit on attachment, the writ should have been discharged (unless the trial court in furtherance of justice saw fit to permit the affidavit to be cured by amendment), and it is apparent that the defect is readily amendable and the amendment will be in furtherance of justice, the cause will be remanded with directions to discharge the attachment unless, within a stated time after *remittitur* filed, the plaintiff shall file an amended affidavit to meet the requirements of section 9257, Revised Codes of 1921.

*Appeal from District Court, Gallatin County; Ben B. Law, Judge.*

ACTION by the Home State Bank of Manhattan against Frank Swartz, in which a writ of attachment was issued and defendant's property attached. From a denial of defendant's motion to discharge the attachment defendant appeals. Reversed, with directions.

*Mr. Harlow Pease,* for Appellant, submitted a brief and argued the cause orally.

*Mr. Walter Aitken,* for Respondent, submitted a brief and argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

The plaintiff bank sued the defendant upon a liability incurred by him as one of its stockholders conformably to an assessment levied to make good an impairment of the capital stock of the bank pursuant to the provisions of section 6109d, Chapter 90 of the 1923 Session Laws. The regularity of the proceedings preliminary to suit is not questioned. The amount payable by defendant was determined to be $500. When after demand he did not pay, his ten shares were sold for $10, leaving a balance due the bank of $490, the amount for which the suit was brought.

With the complaint the plaintiff filed an affidavit for attachment in which it alleged the indebtedness of the defendant to be "upon an implied contract for the direct payment of money now due, * * * and that payment of the same has not been secured by any mortgage or lien upon real or personal property or any pledge of personal property." Upon the complaint and affidavit, a sufficient undertaking having been filed, a writ of attachment was issued and the defendant's property was attached. Defendant appeared specially and moved to discharge the attachment. The court denied his motion. Hence this appeal.

It is not alleged that the defendant took any part in the proceedings which resulted in the assessment, and it may be conceded that all the proceedings against him were *in invitum.*

1. Defendant contends that the trial court erred in holding [1] that the cause of action is one upon which an attachment may be issued. He asserts that the cause of action is not contractual, but the authorities hold otherwise. If by statute a duty or liability is imposed upon one as the result of his ownership in the shares of a corporation, such duty or liability is regarded as contractual in character. (Page on the Law of Contracts, sec. 66; *Selig* v. *Hamilton,* 234 U. S. 652, Ann. Cas.

1917A, 104, 58 L. Ed. 1518, 34 Sup. Ct. Rep. 926; *Marshall* v. *Wentz*, 28 Cal. App. 540, 153 Pac. 244.)

In this state it is provided by statute that the stockholders of every bank "shall be severally and individually liable, equally and ratably, and not one for the other, for all contracts, debts, and engagements of such corporation, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares." (Sec. 6036, Rev. Codes 1921, as amended by Act approved Feb. 13, 1923 [Sess. Laws 1923, Chap. 9, p. 24].) Such has been the law since 1907. (Session Laws 1907, Chap. 190.) Even before that bank stockholders were liable for all debts contracted during the term of their ownership "equally and ratably to the extent of their respective shares of stock." (Comp. Stats. 1887, Fifth Div., sec. 545; Civ. Code 1895, sec. 578.)

When the defendant by purchasing stock in the bank thus [2, 3] entered into a contractual relationship he did so, or will be held to have done so, in contemplation of the statutory law then existing; it became a part of his contract; existing laws become a part of contracts to which they are applicable. (*State ex rel. Great Falls Water Works* v. *Mayor*, 19 Mont. 518, 49 Pac. 15; *Marshall* v. *Wentz, supra; Adams* v. *Clark*, 36 Colo. 65, 10 Ann. Cas. 774, 85 Pac. 642.)

It is settled in Montana that the double liability of a stockholder in a banking corporation is in its nature contractual and not penal. (*Barth* v. *Pock*, 51 Mont. 418, 155 Pac. 282.) The obligation is upon an implied contract. (*Marshall* v. *Wentz, supra.*)

Nothing here said is contrary to the holdings of this court in *Butler* v. *Peters*, 62 Mont. 381, 26 A. L. R. 560, 205 Pac. 247, and *Continental Oil Co.* v. *Montana Concrete Co.*, 63 Mont. 223, 207 Pac. 116, for in those cases the liability of the stockholder was not contractual but penal in character,—the liability was not assumed by or through the voluntary agreement of the parties, but was imposed by statute as in the nature of a penalty.

[72 Mont. 425.]

Section 9256, Revised Codes of 1921, providing when an attachment may issue, is similar, in so far as the issues in this case are concerned, to section 537 of the Code of Civil Procedure of California. In that state it has been held directly that attachment will lie as upon an implied contract for the direct payment of money, in a suit to collect an assessment made against a stockholder upon his statutory liability. (*Marshall* v. *Wentz, supra.*) This holding was foreshadowed by the well-considered case of *Kennedy* v. *California Savings Bank,* 97 Cal. 63, 33 Am. St. Rep. 163, 31 Pac. 846.

2. But counsel says, indulging the assumption that the claim asserted in the complaint is in its nature contractual, yet it is not a contract for the direct payment of money, and the trial court erred in so holding.

It is provided in section 6109d, *supra,* in effect, that if the assessment is not paid within the time limited and if there be any stock remaining on which the assessment is not paid, "the same or such part thereof as is necessary to pay the assessment shall be sold" according to the procedural directions prescribed, and if the stock does not sell for sufficient to pay the assessment thereon, "the board of directors may proceed by suit in the name of the corporation to collect the deficiency from the record holder, whose stock has been thus sold for the assessment."

We agree with counsel that originally the plaintiff had a [4] lien upon the stock by reason of its power to sell the same upon defendant's failure to pay the assessment levied. The statute afforded the plaintiff two remedies for the collection of the assessment: (1) A sale of the stock; (2) a suit for the deficiency. Suit for the deficiency was not available until after the stock was sold after the lien was extinguished. The suit was grounded upon the deficiency which was ascertained by following the method prescribed by the statute. Defendant's liability and plaintiff's remedy must not be confused.

While the double liability of the stockholder exists at all times after his purchase of the stock, the right of the corporation to

bring the suit authorized by the statute does not exist until the assessment has been regularly made and until the stock has been sold to pay the same. A complaint which does not show that the procedural steps provided by the statute leading up to the suit have been taken would not state facts sufficient to constitute a cause of action. When the complaint shows the necessary facts it must needs disclose the fact that the lien which existed in favor of the bank has been exhausted. The defendant's contractual liability has been lessened only by the amount for which the stock was sold.

When this suit was brought defendant was obligated to pay the plaintiff unconditionally and absolutely a definite sum of money. The obligation was grounded upon an implied contract for the direct payment of money; therefore attachment was warranted. (*Wall* v. *Brookman, ante,* p. 228, 232 Pac. 774.)

3. Defendant's contention that plaintiff's affidavit is defective [5, 6] has merit. To comply with the statute the affidavit should show not only that payment of the amount due on the contract "has not been secured by any mortgage or lien upon real or personal property, or any pledge of personal property" but "if originally so secured, that such security has, without any act of the plaintiff, * * * become valueless." (Sec. 9257, Rev. Codes 1921.)

Because of the defective affidavit the court should have sustained the motion to discharge the attachment, unless in furtherance of justice it saw fit to permit the defect to be cured by amendment.

By reference to the complaint it is seen that the defect is readily amendable and it is also apparent that the amendment will be in furtherance of justice. (Sec. 9187, Rev. Codes 1921.)

The complaint shows how the deficiency upon which the suit is grounded was ascertained. The action arises upon the fact that defendant's stock, plaintiff's security, had been sold before the action was begun. The sale of the stock was a prerequisite to the maintenance of the action. In view of the foregoing it may seem that the statement, required by section 9257, is a work

of supererogation—an idle ceremony; but we do not feel at liberty to disregard the statutory mandate.

Because of the somewhat anomalous situation presented the order of this court will be that the cause is reversed with directions to the district court to enter an order discharging the attachment unless within ten days after the *remittitur* is filed in the office of the clerk of the district court, the plaintiff shall file an amended affidavit in compliance with the terms of the statute. The appellant shall recover his costs upon this appeal.

*Reversed with directions.*

ASSOCIATE JUSTICES HOLLOWAY, STARK and MATTHEWS, and HONORABLE W. H. POMEROY, District Judge, sitting in place of MR. JUSTICE GALEN, absent on account of illness, concur.