· SECURITY STATE BANK OF DILLON, MONTANA v.
J. H. SHARPE.[1]

March 11, 1927.

No. 25,925.

**Liability of stockholder after consolidation of banks.**

1. Defendant was a stockholder in a Montana bank which consolidated with another bank. By accepting stock in the consolidated bank in lieu of his former stock he became subject to the liabilities imposed upon the holders of such stock by the law then in force, although enacted after he acquired his original stock in the former bank.

**No foundation for claiming obligation of contract was impaired.**

2. Where stock is issued in a corporation incorporated in another state and neither the charter of the corporation nor the laws in force when the stock was issued are shown, there is no basis for claiming that a subsequent statute authorizing assessments upon the stock impaired the obligation of the stockholders' contract.

**Payment of assessment upon bank stock.**

3. An assessment upon bank stock required to be paid in cash was not rendered invalid by the fact that the officers took notes from some of the stockholders for the amount of their assessment, nor by the fact that the stock of those who failed to pay did not bring the amount of the assessment when sold as authorized by statute.

**Defendant liable for deficiency after sale of stock.**

4. As the only offer for defendant's stock was the bid of one dollar made by the secretary who offered it for sale, defendant is liable for the deficiency whether such bid was valid or invalid.

**Delinquent stockholders not released from liability.**

5. Where a valid assessment was made and was paid by part of the stockholders, the fact that the bank thereafter went into liquidation did not release the delinquent stockholders from liability.

Banks and Banking, 7 C. J. p. 492 n. 62; p. 502 n. 69 New.
Constitutional Law, 12 C. J. p. 782 n. 99.

[1]Reported in 212 N. W. 801.

See note in 52 L. R. A. 381; 7 R. C. L. 166; 2 R. C. L. Supp. 303.
See note in L. R. A. 1915B, 797.

Action in the district court for Hennepin county by the plaintiff, a bank organized under the laws of Montana, to collect an assessment on its stock levied in accordance with the laws of Montana. The court directed a verdict for the plaintiff, and the defendant appealed from an order, Bardwell, J., denying his alternative motion for judgment or a new trial. Affirmed.

*Ueland & Ueland,* for appellant.

*Keyes, Pardee & Solether,* for respondent.

TAYLOR, C.

In April, 1923, the Security State Bank of Dillon, Montana, and the Beaverhead State Bank of the same place were consolidated under and pursuant to the laws of that state; and the consolidated bank was continued under the name and franchise of the Security State Bank, the Beaverhead Bank going out of business. To effect the consolidation, the stockholders of the Security Bank surrendered one-half of their stock, and the stock so surrendered was reissued to the stockholders of the Beaverhead Bank, one share for each two shares of the stock of the Beaverhead Bank. Defendant had 60 shares of the stock of the Beaverhead Bank acquired in the years 1920 and 1921, and received 30 shares of the consolidated bank therefor. The term bank when used hereinafter will designate the consolidated bank.

Chapter 90 of the laws of the state of Montana for the year 1923 [page 243], approved March 6, 1923, contains the following provisions:

"ASSESSMENT ON CAPITAL STOCK TO MAKE GOOD IMPAIRMENT. (1) Whenever the Superintendent of Banks shall determine that an impairment of capital exists in any bank, and his decision shall be concurred in by the Governor and the Attorney General, he shall notify the Board of Directors of such bank by written notice that such impairment exists, stating the amount thereof in dollars

and percentage of the capital stock thereof, and order such Board to make good such impairment within ninety days from date of such notice.

"The Board of Directors shall upon receipt of notice convene and pass a resolution reciting the receipt of such notice of impairment and calling a special meeting of the stockholders of the bank for a day certain in the manner provided in their by-laws. The Superintendent of Banks shall also forward by registered mail a similar notice to each stockholder of record of such bank.

"The stockholders, when assembled as herein provided, shall pass a resolution reciting the facts of receipt of notice from the Superintendent, notice of impairment and notice of meeting, and assessing themselves by assessing the stock of record, payment of which assessment must be made within the time limit specified by the Superintendent of Banks as provided in notice of impairment.

"If there be any stock remaining on which the assessment is not paid as hereinabove provided, the same or such part thereof as is necessary to pay the assessment shall be sold by the Board of Directors acting through the Cashier or Secretary thereof, at public or private sale as appears best for all concerned, on a day certain, not less than thirty days after the day fixed for payment of assessment hereinabove provided, notice of time and place of which sale shall be given by registered mail to the stockholders by the Board through its Cashier or Secretary at least ten days prior to the date thereof and such sale of stock as herein provided for shall effect an absolute cancellation of the outstanding certificate or certificates evidencing the stock so sold, and shall make the same null and void in the hands of the stockholder, his assigns, or pledgees, and the new certificate shall be issued by the bank to the purchaser thereof, for the number of shares purchased, and a new certificate issued to the stockholder of record and delivered to him or any pledgee or assignee thereof for the remaining shares, if any, and the record of the original certificate sold shall be marked cancelled on the books of the bank and such record thereof shall be prima facie evidence of the regularity of the proceedings for the sale of said stock.

"(2) If the said stock does not sell for sufficient to pay the assessment thereon, the Board of Directors may proceed by suit in the name of the corporation to collect the deficiency from the record holder, whose stock has been thus sold for the assessment."

In December, 1923, the superintendent of banks of the state of Montana determined that the capital of the bank had become impaired to the extent of 56 per cent thereof which determination was concurred in by the governor and attorney general of the state; and under and pursuant to the above statute the stockholders of the bank in January, 1924, made an assessment of 56 per cent upon its capital stock to replace the depleted capital, the assessment to be paid in cash on or before March 7, 1924. Of the 28 stockholders, 13 including defendant failed to pay the assessment, and their stock was sold on April 8, 1924, as directed by the statute. The stock of each delinquent was bid in for the sum of one dollar. Thereafter the bank brought this action to collect from defendant the amount of his assessment less the one dollar for which his stock had been sold. The court directed a verdict for the bank and the defendant appealed from an order denying his motion for judgment non obstante or for a new trial.

Defendant concedes that all proceedings were regular in form so we have no occasion to consider matters of procedure.

Defendant contends that his stock in the consolidated bank was received merely as a substitute for his stock in the Beaverhead Bank; that his contract as a stockholder was entered into when he acquired his stock in the Beaverhead Bank; that his rights and obligations are fixed and determined by the law as it then existed; and that the subsequent act of 1923 authorizing an assessment to replenish impaired capital, in so far as it imposes upon him a personal liability for such assessment, is invalid as impairing the obligation of his contract under the doctrine of Yoncalla State Bank v. Gemmill, 134 Minn. 334, 159 N. W. 798, L. R. A. 1917A, 1223.

To this contention plaintiff makes two answers: First, that chapter 90 of the Laws of 1923 having been enacted before the consolidation of the banks and being in force when defendant accepted his consolidated stock, its provisions became a part of his contract

and he is bound thereby; second, that defendant failed to show that the act of 1923 impaired his original contract with the Beaverhead Bank in any respect, for the reason that he did not prove the charter of the Beaverhead Bank nor the laws of Montana in force when he acquired his stock therein.

1. When the consolidated stock was issued, defendant accepted the 30 shares issued to him, receipted to the bank for them, gave a proxy to vote them and has ever since retained them. He must be deemed to have acquiesced in the consolidation and to have voluntarily become a stockholder in the consolidated bank; and he thereby assumed the liabilities imposed upon such stockholders by the laws of the state then in force. See note in 52 L. R. A. 381 et seq.

2. Although defendant claimed that when he acquired his stock in the Beaverhead Bank there was no provision in the charter of that bank nor in the laws of Montana under which such stock could be assessed to make good an impairment of the capital of the bank, he did not put in evidence either the charter of the bank or the laws fixing the rights and liabilities of stockholders therein in force when he acquired his stock. Plaintiff claims that the Constitution of the state of Montana reserves to the state the power to repeal or alter all laws relating to corporations, and that under this reserved power the liabilities imposed by the act of 1923 could be imposed upon stockholders who acquired their stock before any such liability existed without impairing the obligation of their contract; and further claims that this constitutional provision was not put in evidence for the reason that defendant did not put in evidence the law on which he based his claim. It is apparent from the arguments and briefs that both parties knew that the act of 1923 imposed new and additional liabilities on the stockholders, and also knew that the constitutional provision as construed by the supreme court of the state permitted the legislature to impose such new and additional liabilities. See Allen v. Ajax Min. Co. 30 Mont. 490, 77 Pac. 47; Somerville v. St. Louis M. & M. Co. 46 Mont. 268, 127 Pac. 464, L. R. A. 1915B, 811; Barth v. Pock, 51 Mont. 418, 155 Pac. 282; Home State Bank v. Swartz, 72 Mont. 425, 234 Pac. 281. This was doubtless the reason for not proving the prior laws. In view of the

constitutional provision they would not have relieved defendant from liability, if proven. As the record stands there is no evidence of the terms of defendant's original contract and therefore no ground for saying that its obligations were impaired by the act of 1923.

3. The resolution levying the assessment required that it be paid in cash within the specified time. Defendant offered to show that some of the stockholders were permitted to give promissory notes for their assessment instead of paying it in cash, and urges the exclusion of this evidence as error. He claims that taking the notes rendered the assessment invalid and released him from liability for his assessment. This claim is untenable. The assessment was authorized by the statute, and having been levied in conformity with the requirements of the statute it is valid and enforceable. That the officers charged with the duty of collecting it may have taken notes instead of cash from some of the stockholders does not affect its validity. If they exceeded their power in granting an extension of time, possibly the extension might be void, but their unauthorized act would not invalidate the assessment levied by the stockholders.

From a letter from the cashier offered in evidence by defendant it appears that certain parties interested in the bank borrowed from another bank and paid into this bank more than enough money to cover all assessments, and that the notes taken from stockholders were to be paid at the same time as the notes given for this loan in order that such payments might be applied thereon. Also that defendant was offered the privilege of giving a note for his assessment on the same terms accorded others.

4. Defendant cites Merchants Nat. Bank v. Fouche, 103 Ga. 851, 31 S. E. 87, as authority for the proposition that where the stock of the delinquents does not sell for enough to pay the assessments, the proceeding must be abandoned for the reason that it fails to accomplish the purpose of the law. The assessment in the Georgia case was made under the national banking act which contained no provision for collecting a deficiency; and the court held that unless the stock sold for at least the amount of the assessment the attempt to restore the depleted capital failed and the proceeding was abor-

tive. This decision is not in point and the rule adopted does not apply for the reason that the Montana statute provides that, if the stock does not bring the amount of the assessment, the deficiency is to be collected from the stockholder. Home State Bank v. Swartz, 72 Mont. 425, 234 Pac. 281.

5. Defendant claims that the sale of the stock was illegal and void because the secretary who offered it for sale bid in defendant's stock and that of several others as agent for one Kelly, and because the stock of each delinquent, regardless of the number of shares, was bid in for the same amount. He invokes the rule that an agent charged with the duty of selling property cannot act as agent for the purchaser in buying it.

The cause of action rests on the assessment made by the stockholders pursuant to the statute. It does not arise out of the sale and is not founded upon it. The statute however makes the stock the primary fund for payment of the assessment and, whether it be salable or not, the remedy against it must be exhausted as a prerequisite to the bringing of a suit against the stockholder. Home State Bank v. Swartz, 72 Mont. 425, 234 Pac. 281.

The statute provides that the stock shall· be sold by the board of directors through the cashier or secretary at public or private sale as appears best for all concerned. Whether the sale should be public or private was for the board of directors to determine. In view of the effect which a public sale might have upon their depositors, they determined upon a private sale and there is no sufficient ground for questioning the propriety of their action. The statute required that notice of the time and place of sale be given to all stockholders. This notice was given. No other notice was required. The stockholders were notified that on April 8, 1924, at 8 o'clock p. m. at the bank, the secretary would "offer for sale and sell for cash all shares of the stock of this bank on which assessment has not been paid, or so much thereof as is necessary to pay the assessment heretofore lawfully levied against such stock."

At the time and place specified nine directors and two other stockholders appeared in person. The cashier, who was also the secre-

tary of the board, read the name of each delinquent stockholder and the number of shares on which he was delinquent and offered them for sale to the highest bidder. The stock of five of the delinquents was bid in by or for the delinquent, each lot for the sum of one dollar. The stock of seven of the delinquents, including that of defendant, was bid in by the secretary as agent for Kelly, each lot for the sum of one dollar.

The method of making the sale is referred to by the parties as a private auction. It was conducted as an auction, each lot of stock being offered to the highest bidder. Only one bid was received for any lot. While the statute authorized a private sale, it required that notice of the time and place of the sale be given to all stockholders. This requirement precluded selling the stock at any other time or place. The obvious purpose was to give all stockholders an opportunity to buy and to secure to the delinquents an opportunity to take such action as they might deem advisable to protect their interests. If there be a better way of accomplishing the purpose of the statute than by a so-called private auction among the stockholders and such others as they might interest in the matter, it has not been suggested.

No attempt was made to show that the stock had any actual value. The only evidence bearing upon that question is to the effect that it had only a nominal value at best and was considered as likely to constitute a liability instead of an asset. The fact that the bank went into voluntary liquidation shortly thereafter indicates that there was ground for considering the stock undesirable.

The bids of the secretary were doubtless made on the theory that the stock must be sold before an action would lie against the holder. Conceding that these bids were illegal and the sale based thereon void, then there were no offers for the stock so bid in, and it stood unsold for want of a buyer. There is no claim that anyone desiring to buy was not given an opportunity to do so, nor that another sale would produce a better result. Many of the stockholders had paid their assessments. To put all on an equal footing it was necessary to enforce collection from the delinquents. The legislature provided

for a sale of the stock of the delinquents and, in case it did not sell for the amount of the assessment, made the stockholder personally liable for the deficiency. The statute will not permit us to say that the legislature intended that the delinquents should be absolved from liability if their stock proved to be worthless and unsalable and nothing was realized therefrom. No Montana decision is cited dealing with the situation arising where no sale is made for lack of buyers. But in Home State Bank v. Swartz, supra, an action to collect a deficiency, the stock of the delinquent was sold for the nominal sum of one dollar per share; and the decision takes for granted that the proceedings were sufficient and the sale valid, and that the delinquent was liable for the deficiency of $99 per share. We see no good reason for saying that the delinquent is liable where a sale is held and the stock sold for such a nominal amount, and is not liable where the sale is held in full compliance with the requirements of the statute, but the stock is not sold for lack of an offer for it.

We reach the conclusion that, as the bid made by the secretary was the only offer for defendant's stock and there is no claim that he would be benefited by an attempt to resell it, he is liable for the deficiency whether the bid and the sale based thereon were valid or invalid. At the time of the sale it was undoubtedly known that the stock was worthless and unsalable, for that same evening the directors took action looking toward placing the bank in liquidation. And under the circumstances it is fair to assume that the bids of the secretary were made solely for the purpose of putting the bank in position to compel the delinquents to meet an obligation imposed on all stockholders and which the other stockholders had met promptly in a good faith attempt to save the bank from insolvency.

6. We think that the fact that the bank went into liquidation shortly after the sale and that at the time of the sale the advisability of going into liquidation was considered and discussed has no bearing on the questions involved herein. The assessment had been made by the stockholders themselves two or three months previously

and had apparently been paid within the specified time by many of them. To put all on the same footing it was necessary to collect from the delinquents.

Order affirmed.