20101. SMITH, administrator, *v.* BENNETT, superintendent of banks.

DECIDED JULY 21, 1930.

*Dorsey & Shelton,* for plaintiff in error.

*C. N. Davie, J. F. Kemp, L. S. Camp,* contra.

BELL, J.· On October 11, 1926, the superintendent of banks issued an execution against Claude Smith as administrator of the estate of F. R. Smith, in the sum of $4,200, to enforce the liability of the defendant as a stockholder in the Bank of Palmetto, Georgia, which had failed in that year and was in process of liquidation. The defendant in fi. fa. filed an affidavit of illegality in which he made the following allegations: "The defendant stockholder in said Bank of Palmetto has heretofore paid to said bank and to the depositors of said bank, through said bank, an amount equal to the face value of defendant's respective shares of stock in said bank over and above the par value of defendant's shares of stock in said bank, to-wit: the sum of $4,200. Affiant says that· defendant in fi. fa. in this cause paid, in the early part of 1920, into the Bank of Palmetto, Georgia, and, through said bank, to the depositors of said bank, at a time when said bank was hopelessly insolvent and without funds to pay the depositors thereof the deposit accounts in said bank, the sum of $4,200 in full settlement and satisfaction of this defendant stockholder's statutory liability to depositors of said corporation for all moneys deposited in said bank, in an amount equal to the face value of this defendant's respective shares of stock in said bank, to-wit: 42 shares of stock of the par value and of the face value of $4,200. Defendant in fi. fa. herein having heretofore paid said statutory assessment equal in amount to the

face value of defendant's stock, there was, at the date of the issuance of the aforesaid execution by the superintendent of banks of the State of Georgia, no liability for double payment to said bank or to the depositors of said bank, and said execution therefore was illegal and unlawfully issued and levied upon the real estate of defendant, as above set forth." On an oral motion of the plaintiff in the nature of a general demurrer, the court struck the affidavit of illegality, and the defendant excepted.

It appears from the record, expressly or by necessary inference, that the payment in 1920 was made to restore an impairment of the capital stock and to enable the bank to continue in business, in contemplation of sections 1, 2, and 3 of article 6 of the banking act of 1919; and that the execution now sought to be arrested was issued in pursuance of section 20 of article 7, for the purpose of enforcing the special liability to depositors, created by section 1 of article 18, which arises upon the bank's failure and liquidation. Ga. L. 1919, p. 135.

We concur in the opinion of the trial court that the affidavit of illegality failed to set forth any defense. The payment relied on by the defendant was intended to keep the bank running, and, with like payments from others, did keep it running for approximately six years; and the liability then met was a distinct and different liability from that now sought to be enforced by the superintendent, which is designed to create a special fund for payment to those who were depositors at the time of the bank's subsequent failure and liquidation. There is nothing to indicate that the debts to depositors, to which the payment of 1920 was applied, were the same as those which existed at the close of the bank in 1926; and since the bank continued as an active institution during the interim, the presumption is that new relationships resulted and that depositors are not to be paid again or to have additional payments on amounts the bank owed them at the time of the prior assessments to restore the stock impairment. The payments in 1920 were made for the benefit of the stockholders in the way of an improvement or repair of the property, and were in the nature of an investment.

It would be a very useless thing for the stockholders, whether voluntarily or at the behest of the superintendent, to pay an amount to restore an impairment of the capital stock and to enable the bank to continue business, if the stockholders are thereby relieved of any

further liability to depositors in case the bank finally closes and has to be liquidated as an insolvent institution. In such a case the bank could not continue to operate, because no one would care to deposit money in a bank the liability of whose stockholders had been exhausted, where other institutions not so handicapped were offering their facilities. A bank which is allowed to continue as a going concern necessarily holds out to the world that the depositors will be protected by the stockholders to the extent of 100 per cent. of their capital stock, respectively, and those who act upon this status are unaffected by payments which may theretofore have been made by the stockholders to enable the bank to keep its doors open as an invitation for deposits and transactions with the public.

This is a statement of the law of this State as we understand it, and is not a mere expression of what we might think to be just and right in the premises.

A question similar to that here presented was decided by the United States Supreme Court in a case arising under the national banking act, in which the court said: "The assessment imposed upon the stockholders by their own vote, for the purpose of restoring their lost capital, as a consideration for the privilege of continuing business, and to avoid liquidation under section 5205 of the Revised Statutes, is not the assessment contemplated by section 5151, by which the shareholders of every national banking association may be compelled to discharge their individual responsibility for the contracts, debts, and engagements of the association. The assessment as made under section 5205 is voluntary, made by the stockholders themselves, paid into the general funds of the bank as a further investment in the capital stock, and disposed of by its officers in the ordinary course of its business. It may or may not be applied by them to the payment of creditors; and in the ordinary course of business certainly would not be applied, as in cases of liquidation, to the payment of creditors ratably; whereas, under section 5151 the individual liability does not arise, except in case of liquidation and for the purpose of winding up the affairs of the bank. The assessment under that section is made by authority of the Comptroller of the Currency, is not voluntary, and can be applied only to the satisfaction of the creditors equally and ratably. If the claim in the present case were allowed, it would follow that in every case payments made by stockholders, for the purpose of

restoring the impaired capital, would be considered as credits on the ultimate individual responsibility of shareholders, and the whole efficiency of the provisions of section 5151 for the protection of the creditors of the company at the time of liquidation would be destroyed. The obligations of the shareholders under the two sections are entirely diverse; and payments made under section 5205 can not be applied to the satisfaction of the individual responsibility secured by section 5151. Scovill v. Thayer, 105 U. S. 143 (26 L. ed. 968)." Delano v. Butler, 118 U. S. 634, 653 (7 Sup. Ct. 39, 30 L. ed. 260).

For other decisions tending to the same conclusion, see Andrews v. Farmers Trust & Savings Bank, 204 Iowa, 243 (213 N. W. 925) ; Smith v. Goldsmith, 50 S. D. 1 (207 N. W. 977) ; Duke v. Force, 120 Wash. 599 (208 Pac. 67) ; Austin v. Fleming (Texas Civ. App.), 290 S. W. 835 ; Whiteman v. Bishop (Texas Civ. App), 289 S. W. 730 ; Security State Bank v. Sharpe, 170 Minn. 454 (212 N. W. 801) ; Witters v. Sowles, 32 Fed. 130.

Counsel for the plaintiff in error have cited a number of early decisions by the Supreme Court of Georgia dealing with the liability of stockholders under legislative charters, and holding that such limited personal liability is satisfied when the stockholder has paid or been charged with debts to an equal amount; whether he has paid the same voluntarily or has been compelled to do so upon suit brought by the bank or any of its creditors. *Lane* v. *Harris,* 16 *Ga.* 217 (4) ; *Robinson* v. *Bank of Darien,* 18 *Ga.* 65 (15) ; *Belcher* v. *Wilcox,* 40 *Ga.* 391; *Jones* v. *Wiltberger,* 42 *Ga.* 575; *Branch* v. *Baker,* 53 *Ga.* 502 (3) ; *Boyd* v. *Hall,* 56 *Ga.* 563. It appeared, however, in each of these cases that the corporation had ceased to do business, and that the payments or charges in question were in satisfaction of the ultimate liability to creditors of the defunct institution. It is a liability of this character that the superintendent of banks is seeking to enforce in the instant case, but upon which the defendant stockholder has paid nothing. The payment he made was to satisfy a different liability, which did not exist or was not claimed in any of the cases just referred to.

For similar reasons or because of different statutory provisions, the cases from other jurisdictions, cited for the plaintiff in error, are distinguished from the case at bar.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*